PACKET COMPANY *v.* CATLETTSBURG.

1. A town situate upon navigable waters may, without infringing the Constitution of the United States, erect wharves, collect reasonable wharfage proportioned to the tonnage of vessels, and forbid them, under a penalty, to land within the corporate limits at any point other than the public wharf or landing.

2. The ordinances of the town of Catlettsburg (*infra*, p. 560), adopted pursuant to the power conferred by its charter, are not unconstitutional, and this case shows no such abuse of that power as entitles the complainant to relief.

3. Congress has not prescribed the rules touching the landing and departure of vessels, wharfage, and other matters relating thereto, which are enforced at points upon the navigable waters of the country where the amount of commerce requires them; and if they may be justly regarded as regulations of commerce, they are such as the States may respectively adopt, until that body deems it expedient to act.

APPEAL from the Circuit Court of the United States for the District of Kentucky.

The facts are stated in the opinion of the court.

*Mr. David Stuart Hounshell* for the appellant.

There was no opposing counsel.

MR. JUSTICE MILLER delivered the opinion of the court.

This was a suit in chancery brought by the Cincinnati, Portsmouth, Big Sandy, and Pomeroy Packet Company against the Board of Trustees of the Town of Catlettsburg.

The bill is very inartificially drawn, and its allegations very imperfectly present some of the questions which, by the brief of counsel, it is supposed to have raised. It alleges the complainant to be a corporation, owning a large number of steamboats engaged in the navigation of the Ohio River, and making frequent landings at the public wharf of the town of Catlettsburg, on the Kentucky side of that river. That upon each of said landings they were subjected to an illegal tax proportioned to the tonnage of each of said boats, amounting, between Jan. 1, 1870, and April 30, 1877, to an aggregate sum of $5,092. Parts of the ordinance of the town under which this tax was collected, and of the statute of Kentucky supposed to authorize the ordinance, are set out in the bill. This ordinance is alleged to be void as a regulation of commerce, and as laying a

duty of tonnage forbidden by section ten of the first article of the Constitution. The bill then alleges that the tax is excessive and beyond a reasonable charge for the use of the wharf by the boats of the complainant, and that the amount already collected exceeds the cost of erecting and preserving the wharf.

An amended bill was also filed, which does not materially affect the matters in issue.

The thirty-first section of the act of the Kentucky legislature of Jan. 28, 1868, incorporating the town of Catlettsburg, authorizes the board of trustees " to erect, make, and repair wharves and docks, and to regulate and fix the rate of wharfage thereat; to regulate the stationing or anchoring of vessels or boats or rafts within the town limits, and the depositing freight or lumber on the public wharves."

The ordinances of the town complained of are the following, enacted Feb. 23, 1871 : —

" The following rates are established as charges upon steamboats and other water-crafts landing at the public landing of Catlettsburg, Ky.: On transient steamboats, $1 for every landing ; on the largest-sized regular packets, over 100 tons, custom-house measure, $1 for each landing ; and on all steamboats under 100 tons burthen, fifty cents for each landing; for all store-boats or trading-boats, $1 for each landing, and if they remain more than one day, fifty cents per day for each day they remain ; and for each wharf-boat used for the purpose of wharfage and commission, $10 per month."

And another, adopted by said board of trustees May 5, 1873, in the following words : —

" That the public landing on the Ohio River, between Division and Main Streets, i hereby appointed and established as a steamboat landing, and all steamboats arriving at the town of Catlettsburg shall land at the wharf situate as aforesaid between Division Street and Main Street, and at no other point within the corporate limits of the town of Catlettsburg, except by the written consent of the wharfmaster of said town.

" That for any violation of the foregoing section the owners, controllers, or masters of any boat so violating shall be jointly and severally liable to pay a fine of $10 for each offence, which may be recovered by warrant in the name of the Commonwealth of Ken-

tucky, for the use of the Board of Trustees of the town of Catletts-
burg.

"It is hereby made the duty of the wharfmaster to enforce th.
ordinance, and to report and prosecute all violations thereof."

The prayer of the bill is for an injunction restraining the de-
fendants from the collection of all taxes from the complainant's
boats while landing at the natural and unimproved shore of the
Ohio River, and at points other than the improved landing of
the defendants, between Division and Main Streets, and from
the collection of all excessive taxes while landing at *any* point
within the corporate limits, and from the enforcement of the
ordinance requiring them to land at the defendants' improved
wharf, between Division and Main Streets; and the original
bill prayed a decree for the sums improperly exacted of com-
plainant.

The court below held, on demurrer to the original bill, that
there could be no recovery in this suit for the amount illegally
exacted and paid, because an action at law was the appropriate
and adequate remedy for that purpose, and in that the court
was probably right.

If, however, the bill presents no ground for the injunction
prayed, the prayer for recovery of a moneyed decree becomes
immaterial.

The framer of the bill seems to have labored under a mis-
apprehension of the nature of the transaction in calling the
demands made of the complainant taxes.    We can see nothing
in the ordinances intended to impose a tax upon anybody.
The bill, as we have said, is not very clear in its statements of
the manner in which this money was paid or collected.    It
must, however, have been paid for the use of defendants' wharf
or improved landing-place, in which case it is complained of as
an excessive charge, or it must have been paid as a penalty for
landing at other points than between Division and Main Streets
in violation of the ordinance.    In neither case is there any-
thing in the nature of a tax.

The effort of the pleader undoubtedly is to bring the case
within the constitutional prohibition of a tax upon tonnage.

If, however, the trustees of the town had a right to compen-
sation for the use of the improved landing or wharf which they

had made, it is no objection to the ordinance fixing the amount of this compensation that it was measured by the size of the vessel, and that this size was ascertained by the tonnage of each vessel. It is idle, after the decisions we have made, to call this a tax upon tonnage. *Cannon* v. *New Orleans*, 20 Wall. 577 ; *Packet Company* v. *Keokuk*, 95 U. S. 80 ; *Packet Company* v. *St. Louis*, 100 id. 423 ; *Guy* v. *Baltimore*, id. 434.

Still less ground exists for holding that the penalties imposed for a refusal to obey the rules for places of landing, and the orders of the wharfmaster on that subject, are taxes on tonnage.

Nor is there any room to question the right of a city or town situated on navigable waters to build and own a wharf suitable for vessels to land at, and to exact a reasonable compensation for the facilities thus afforded to vessels by the use of such wharves, and that this is no infringement of the constitutional provisions concerning tonnage taxes and the regulation of commerce. See cases above cited.

There remains to be considered the validity of the ordinance which forbids the landing of vessels, except by the permission of the wharfmaster, at any other point within the town than between Division and Main Streets, and the question of excessive charges for the use of the wharf.

There can be no doubt that the rules which govern the landing and departure of vessels at points situated on navigable waters may seriously affect them in their business of navigation and transportation, and in some sense such rules are regulations of commerce.

On the other hand, the necessity is obvious of the existence in each port, where vessels as large as steamboats land at the shore and deposit their cargoes on the banks of navigable streams, of some authority to prescribe the places where this may be done, the time of doing it, and the points at which they may discharge cargo, both as relates to the streets, shores, houses of the town, and other vessels landing at the same time.

The protection of the shore of the sea or bank of a river on which a town is situated is a necessity to the town, and the washing and crumbling of the bank from the agitation of the waters, made by the landing of large steamers, demand that such regulations should exist.

Small vessels, without steam, rafts, flat-boats, keel-boats, loaded to their very utmost capacity, and liable to be sunk by the waves which accompany the landing of large steamboats, have the same right to land at the shore that steamers have, and they have a right to protection against their powerful competitors for trade. This can best be secured by appropriate regulations prescribing places for the landing of each, and in some instances placing the matter under the control of a wharfmaster or other officer, whose duty it shall be to look after it.

Such rules and regulations and such an officer exist in every place where the number of the inhabitants or the amount of the water-borne commerce justifies or requires it. The necessity for the existence of this power cannot be doubted.

We are not aware that in any instance Congress has attempted to exercise it. If it be a regulation of commerce under the power conferred on Congress by the Constitution, that body has signally failed to provide any such regulation. It belongs also, manifestly, to that class of rules which, like pilotage and some others, can be most wisely exercised by local authorities, and in regard to which no general rules, applicable alike to all ports and landing-places, can be properly made. If a regulation of commerce at all, it comes within that class in which the States may prescribe rules until Congress assumes to do so. *Cooley* v. *Board of Wardens*, 12 How. 299 ; *Gilman* v. *Philadelphia*, 3 Wall. 713 ; *Crandall* v. *State of Nevada*, 6 id. 35 ; *Pound* v. *Turck*, 95 U. S. 459.

There is probably not a city or large town in the United States, situated on a navigable water, where ordinances, rules, and regulations like those of the town of Catlettsburg are not made and imposed by authority derived from State legislation, and the long acquiescence in this exercise of the power, and its absolute necessity, are arguments almost conclusive in favor of its rightful existence.

We are of opinion that there is nothing in the ordinances of the town of Catlettsburg complained of, authorized as they clearly are by the statute of Kentucky, which is repugnant to the Constitution of the United States.

But while the authority to make such regulations may exist

in the trustees of that town, it must be conceded that an oppressive abuse in the exercise of that power may present a case in which the proper court could give relief. If, for instance, while forbidding all boats to land elsewhere than at a designated and limited part of the shore, that space was too small to permit the landing at the same time of vessels whose business required it; or if, having assumed the obligation of providing appropriate and sufficient wharf accommodations and forbidden boats to land at any other place, there was in fact no proper landing-place provided, a court would find some remedy for such oppressive and arbitrary conduct.

But nothing in this bill implies that the landing-place pointed out by the ordinance is insufficient in dimensions or wanting in proper means of accommodating the business of the vessels using it.

So, also, while the statute authorizes the trustees to establish the rates of wharfage, if the sum demanded for that service is so far beyond a reasonable compensation for the use of the city's wharf as to be oppressive, and an abuse of the power thus conferred, the courts could in some way give appropriate relief, and it is this part of appellant's case which presents the only difficult question for our consideration.

We do not feel justified, however, on the allegations of this bill, in reversing the order of the Circuit Court, sustaining a demurrer to it, for several reasons.

In the first place, the bill is manifestly founded on the idea of the unconstitutionality of these ordinances, and an injunction is asked to restrain defendants from interfering with the landing anywhere within the city limits of appellant's boats, and in general from enforcing the obnoxious ordinances. There is, it is true, a prayer to restrain them from the collection of all *excessive taxes* while their boats are landing within the corporate limits; but what is excessive or what is reasonable is not shown, and, as we have already said, the money collected is not taxes in any sense whatever.

In the next place, the bill does not show how or why the sums paid for the use of the wharf, or for landing at other places, is excessive. The one reason for so charging which is given is evidently fallacious; namely, that the town has already

raised enough money from the use of the wharf to pay for its construction and preservation.

The compensation which either the city or private owner of a wharf is entitled to receive is not to be based exclusively on a reimbursement of the cost of the wharf, and no such criterion can govern in the matter.

The ordinance establishing these rates and penalties is given in the bill, and has been copied in this opinion. It is by no means apparent that they are excessive. When it is considered that the wharf needs constant repair and care; that the compensation of a wharfmaster, who must be always ready to locate the vessels and collect the charges, is to be paid; and that the character and extent of the improvements are not shown, it would seem that something more than characterizing those rates as excessive is needed to invoke the restraining power of a court of equity. It is not alleged that they are oppressive, or an abuse of the power confided to the trustees. No statement is made of what would be reasonable in the premises, and, consistently with the bill, the charge may be so little in excess of a just compensation as not to call for equitable relief.

There is no hindrance to trying this question in an action at law, where the verdict of a jury or the judgment of the court in one or two cases would establish what is reasonable under the circumstances; and this being once established by the appropriate tribunal, the court of equity could restrain the excess.

We concur with the circuit judge, that no such case of oppressive use or clear abuse of the power properly conferred on the trustees in regard to wharfage charges is alleged by this bill as to justify the interposition of a court of equity.

*Decree affirmed.*