## SILVER and another *v.* TOBIN and others.[1]

*(Circuit Court, E. D. Louisiana. May 7, 1886.)*

1. CONSTITUTIONAL LAW—WHARFAGE TAX.

    The question of the constitutionality of wharfage taxes exacted by the city of New Orleans, and as to their being excessive, has been settled by this court in this district adversely to complainants in two cases,—*Leathers v. Aiken,* 9 Fed. Rep. 679, and *Packet Co. v. Aiken,* 4 Woods, 208, S. C. 16 Fed. Rep. 890.

2. MUNICIPAL CORPORATIONS—CONTRACTS FOR PUBLIC WORKS—CHARTER OF THE CITY OF NEW ORLEANS—SECTIONS 8 AND 21.

    It is very doubtful whether section 21 of the charter of the city of New Orleans (Acts 1882, p. 24) applies at all to the matter of farming out the wharves and landings, as provided for in section 8, (page 21;) but, if it does, it is clear that neither the duties and powers devolving on the city council "to prescribe and collect levee dues," and, in case of the lease of the wharves, to fix in advance "just and reasonable charges on vessels and merchandise," nor the rates of charges for wharfage when once fixed by the council, are to be affected by the said provision for adjudicating contracts for public works ordered by the council.

3. SAME—NON-RESIDENTS.

    Non-residents, who are not tax-payers of the city of New Orleans, have no standing in court to inquire how the city council of New Orleans manages or mismanages the affairs of the city.

4. WHARFAGE TAX—REMEDY FOR EXCESSIVE.

    Citizens of the United States, engaged in running steam-boats or vessels to the port of New Orleans, and compelled thereby to use the wharves and landings of the city of New Orleans, have a right to see that they are not charged excessive wharfage, and, if they are, they may resist, and refuse to pay the same, so far as excessive. In the case of *Packet Co. v. Catlettsburg,* 105 U. S. 565, the remedy in the case of excessive rates of wharfage is pointed out to be by an action at law to determine the excess, and then by injunction from a court of equity to restrain it.

On Motion for Injunction *Pendente Lite.*

*John H. Kennard, W. W. Howe,* and *S. S. Prentiss,* for complainants.

*W. S. Benedict, A. G. Brice, Thomas L. Bayne, George Denegre, E. H. Farrar,* and *E. B. Kruttschnitt,* for defendants.

PARDEE, J. The complainants, D. H. Silver and T. C. Sweeney, citizens, respectively, of the states of Missouri and Virginia, alleging themselves to be the owners of the steam-boat C. C. Carroll, and a one-half interest in the steam-boat Corona, pray for an injunction *pendente lite* to restrain the city of New Orleans, and Tobin and others, composing the firm of Aiken & Co., wharf lessees, from carrying out the provisions of a contract between them and the city of New Orleans, of the date thirty-first of August, 1885, by which the city extended, for a period of five years from the thirtieth day of May, 1886, the lease entered into between the city and Aiken & Co. on the thirtieth day of May, 1881, by which Aiken & Co. were granted the right to collect the revenues of the wharves and landings of the city

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

of New Orleans for certain considerations therein mentioned. The bill further charges that complainants will be compelled, by the ordinance of the city of New Orleans and the lease aforesaid, to pay wharfage at the rate of eight cents per ton of their tonnage each time their boats land at the wharves, and that they have each an interest of more than $500; that the original contract of May 30, 1881, and the extension thereof, are illegal, unconstitutional, null, and void; that the city of New Orleans had no power to adopt the ordinance on which the contract of August 31, 1885, is based, nor power to enter into said contract,—the section of the city charter attempting to grant the alleged power, and the ordinance and contract, being all in conflict with article 1, §§ 8, 10, of the constitution of the United States, as an attempted regulation of commerce and tax on tonnage; that the city cannot tax commerce with the cost of construction of artificial facilities, but only for the use thereof. The bill further alleges that the contract of August 31st is illegal, because entered into in violation of the city charter, which provides that the lessees of the wharves shall erect sheds upon the wharves, and that all contracts for public works shall be offered by the comptroller at public auction, and adjudicated to the lowest bidder, or be advertised for sealed proposals, and given to the person making the lowest bid,—the city council having contracted with Aiken & Co., the defendants, in the face of lower bids, which they refused to entertain and consider; and, finally, it is charged that the rates of wharfage exacted are excessive, and enable the defendants to make a profit of not less than $100,000 per annum; that the rate on steam-boats is eight cents per ton, whereas five cents would be a fair and reasonable rate; and that, had competition been allowed, "the leasing or farming out might have been made for five cents a ton." For these reasons the complainants pray that the ordinance 1386, council series, and contract of August 31, 1885, be declared illegal, annulled, and the execution thereof enjoined.

Exhibits attached to the bill show: (1) The alleged contract with Aiken & Co. (2) Letter of Aiken & Co. asking an extension of their present lease. (3) Proposition of C. A. Eager and others to take the contract at rates of the Aiken & Co. lease, and donate $50,000 and plant to the city. (3½) Proposition of R. Sinnott & Co. to take wharf lease on reduced terms, if the same is opened to competition. (4) Statements of commissioner of public works before the council to the effect that two members of the counsel were connected with the wharf lessees; that the rates could be reduced to five cents per ton; and that the lessees cleared a profit of $98,000; and asking for delay of one week to make complete proof. (5) Alleged reasons of the mayor for approving the contract, that "they are all jobs," but I think this is the least.

Complainants' affidavits in support of the present motion are: (1) Affidavit of James Sweeney, setting forth his proposition, on the ba-

sis of the Aiken lease, to lease the wharves for five years; keeping all wharves and landings in good order and repair, and paying $30,-000 annually for policing, $10,000 annually for contravention clerks, to light the wharves by electricity, to build $30,000 new wharves annually, and to allow a rebate of 10 per cent. on rates charged at present. (2) Affidavit of Thomas P. Handy that the lease of the wharves, if proper competition had been allowed, might have been made at a reduction of rates of at least 10 per centum; and that he proposed to lease on the basis of the Aiken lease, and make a donation to the city towards the support of the public schools, or as the city might direct, of $75,000.

The entire case of the complainants, as made by themselves, is here set forth, and their grievances may be set down under these heads: (1) The wharfage fees to be exacted under the renewed lease to Aiken & Co. are really a tonnage tax, in violation of the constitution of the United States. (2) The rates of wharfage under said renewed lease are excessive. (3) The section of the city charter authorizing the city to lease the wharves is in violation of the constitution of the United States. (4) The lease, as made by the city to Aiken & Co., was in violation of the city charter, and void, because the lease provides for public works ordered by the city council, and the same was not adjudicated to the lowest bidder, according to the requirements of section 21 of the city charter. (5) The city council made undue haste in considering and determining the matter, refusing to listen to the propositions of those citizens who desired to bid for the privileges to be granted.

Except the two last-mentioned grievances, the issues presented have been passed upon by this court in this district, and settled adversely to complainants in the two cases of *Leathers* v. *Aiken,* 9 Fed. Rep. 679, and *Packet Co.* v. *Aiken,* 4 Woods, 208, S. C. 16 Fed. Rep. 890. See, also, *Cannon* v. *New Orleans,* 20 Wall. 577; *Packet Co.* v. *Keokuk,* 95 U. S. 80; *Packet Co.* v. *St. Louis,* 100 U. S. 423; *Vicksburg* v. *Tobin,* Id. 430; *Packet Co.* v. *Catlettsburg,* 105 U. S. 559; *Transportation Co.* v. *Parkersburg,* 107 U. S. 691; S. C. 2 Sup. Ct. Rep. 732.

Section 8 of the city charter (act No. 20 of 1882) contains this provision, among others:

"The council shall also have power * * * (5) to prescribe and collect wharfage and levee dues, and to erect sheds over the wharves and buildings, to protect merchandise and to make such charges therefor as will pay for the construction, keeping in repair, lighting, and policing of such wharves and sheds, and no more. The council may lease or farm out the wharves and landings in sections, for a period not exceeding ten years, to such persons as will bind themselves with security to construct and keep in good repairs such wharves and landings, and construct and keep in repairs sheds over the wharves, and light the same, and pay the cost of policing the same, for such just and reasonable charges on vessels and merchandise, or either, for the use of the wharves and sheds, as may be fixed in advance by the council, and with such specifications as may be required by them."

Section 21 of the same law, among other things, provides that—

"(21) All contracts for public works, or for materials or supplies ordered by the council, shall be offered by the comptroller at public auction, and given to the lowest bidder who can furnish security satisfactory to the council; or the same shall, at the discretion of the council, be advertised for proposals, to be delivered to the comptroller in writing, sealed, and to be opened by said comptroller in presence of the finance committee of said council, and given to the person making the lowest proposal therefor who can furnish security satisfactory to the council: provided, that the council shall in either case have a right to reject any or all bids or proposals."

It is very doubtful whether the provision quoted from section 21 applies at all to the matter of farming out the wharves and landings as provided for in section 8; but, if it does, it is clear that neither the duties and powers devolving on the city council, "to prescribe and collect wharfage and levee dues," and, in case of lease of the wharves, to fix in advance "just and reasonable charges on vessels and merchandise," nor the rates of charges for wharfage, when once fixed by the council, are to be affected by the said provision for adjudicating contracts for public works ordered by the council.

It may be noticed, in passing, that if the rates of wharfage are fixed in advance by the council, as the charter requires in case of leasing the wharves, the adjudication, if there is any, is of a privilege sold by the city; and that common sense would require it to be to the highest bidder, unless, indeed, the rates of wharfage fixed should be so low as to require the city to give a bonus to the lessee. The rates of wharfage not being affected by the adjudication of the lease, whether it is to the highest or lowest bidder, or not open to bidding, the complainants are without interest to attack the matter. Not being residents or tax-payers of the city of New Orleans, they have no standing in court to inquire how the city council of New Orleans manages or mismanages the affairs of the city.

As citizens of the United States, engaged in running steam-boats or vessels to the port of New Orleans, and compelled thereby to use the wharves and landings of the city of New Orleans, they have a right to see that they are not charged excessive wharfage; and, if they are charged excessive wharfage, they may resist, and refuse to pay the same, so far as excessive.

In the case of *Packet Co.* v. *Catlettsburg,* 105 U. S. 565, the remedy in the case of excessive rates of wharfage is pointed out to be by an action at law to determine the excess; and, the excess being thus legally established, then, by injunction from a court of equity, to restrain the excess. If this is the correct remedy, and if it is available, it would seem that the complainants have no standing for the relief they seek, even if the court should be of opinion, upon the case as made, that the proposed charges are excessive. The injunction *pendente lite* is therefore to be refused in every aspect of the case.

This decides the case as made by the complainants, without reference to the showing made by the defendants, which is to the effect

(1) that it was necessary to raise the wharves, and petitions had been presented to the council to that effect; (2) that nearly all the steamboat and steam-ship interests were satisfied with the Aiken lease then in force, and asked to have it renewed; (3) that the rate of wharfage fixed, in the light of costs of the wharves, facilities furnished, and necessary repairs and new constructions, is reasonable; (4) that the ordinance was regularly passed and considered; (5) that the collection of wharfage by the city had always been attended by loss; (6) that Eager & Co., lessees of the wharves prior to 1881, were not reliable, and did not keep the wharves in good order, and left them at the expiration of their lease in a dilapidated condition; (7) that the mayor of the city had good reasons to approve the ordinance renewing the lease to defendants; (8) that neither of the complainants had an interest in the matter of $500, if he had any at all; (9) that none of the proposals actually made to the council were proper or available, as each contained some provision not warranted by the law nor the city charter.

It will be noticed that the charge made by complainants that responsible parties were prepared to take the lease of the wharves on the same conditions as Aiken & Co.'s extension, but with a reduced rate of wharf charges, if an opportunity had been given, thus reducing the burden on commerce in the port of New Orleans without damage to the city's revenues or interests, or, if rates were to be maintained, give a bonus to the city, is not met by the defendants, and we are left in the dark as to why it is the council would neither reduce the rate of wharfage, nor allow the city to derive benefit from the lease, if the rates were to be maintained.