ULSTER S. S. CO., Limited, et al. v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.

(Circuit Court of Appeals, Fifth Circuit. May 13, 1924. Rehearing Denied June 30, 1924.)

No. 4273.

1. **Wharves ☞17—Regulation by port commissioners held not shown to be unreasonable.**

A schedule of wharfage charges, adopted by the board of commissioners of the port of New Orleans when port was congested, giving free wharfage for assembling of cargo prior to arrival of vessel for seven days after assignment of a wharf to a vessel, subject to proviso that, if vessel did not arrive within seven days, wharfage should be paid thereafter until her arrival, *held* not shown to be unreasonable as applied to vessels not delayed by some mishap or unexpected casualty.

2. **Commerce ☞10—Validity of wharfage charges governed by state law, in absence of congressional action.**

Question of validity of wharfage charges at port of New Orleans is governed by Louisiana Law; Congress having enacted no law on that subject.

3. **Wharves ☞17.—Wharfage charges prescribed by port commissioners enforceable unless unreasonable.**

The power to prescribe and collect wharfage charges having been conferred by Acts La. 1900, No. 36, Acts La. Extra Sess. 1915, No. 14, and Acts La. 1920, Nos. 69 and 103, on board of commissioners of the port of New Orleans without any specific limitation or restriction, the charges prescribed by it are enforceable, so far as they are not shown to be unreasonable.

4. **Wharves ☞17—Commissioners may adopt policy having beneficial effect on port's commerce.**

Board of commissioners of the port of New Orleans may, in its administration of the public wharves, adopt and carry out the policy of having that property so used as to benefit the commerce of that port, and fix the rates to be charged with a view to promote that policy.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Separate libels in admiralty by the Board of Commissioners of the Port of New Orleans against four steamships, in which the Ulster Steamship Company, Limited, was a claimant, John N. Heyn and others sureties. From decrees for libelant (The Rathlin Head, 292 Fed. 867), claimants and sureties appeal. Affirmed.

Geo. H. Terriberry, Frazer L. Rice, W. W. Young, Jos. M. Rault, and Walter Carroll, all of New Orleans, La., for appellants.

Arthur McGuirk, of New Orleans, La., for appellee.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

WALKER, Circuit Judge. The appellee, which is an agency of the state of Louisiana, vested by law with complete jurisdiction of the public wharves of the port of New Orleans, and empowered to establish and collect charges for the use of all facilities administered by it (Acts La. 1900, No. 36; Acts La. Extra Session 1915, No. 14; Acts

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

La. 1920, Nos. 69 and 103), filed separate libels against four ships to enforce the payment of balances alleged to be due for the use by each of those ships of a wharf controlled by the appellee. The cases were consolidated, and resulted in a decree sustaining the claims asserted by the libels. The appeal is from that decree.

[1] The claims asserted arose while a tariff or schedule of charges or rates enacted by appellee on February 18, 1920, as it was amended on July 27, 1920, was in effect. Under that schedule or tariff, all sea-going vessels were required to pay for the use of the wharves a dockage wharfage charge of four cents a gross ton for the first day, three cents each for the second and third days, two cents for the fourth day, one cent each for the fifth and sixth days, no charge for the seventh to the sixteenth days, and after that one cent a gross ton for each day from the seventeenth to the twenty-first, inclusive; the provision to the effect just stated being qualified by a provision to the effect that a vessel shall be allowed, prior to its arrival, the use, free of charge, for 7 full days, of a wharf assigned to it, for the purpose of assembling cargo, provided that, if the vessel does not occupy such wharf after the expiration of the 7 days, a wharfage charge of four cents a gross ton a day shall be made for each successive day up to the day of its arrival at the berth, and after its arrival the rates above set out shall be charged. Pursuant to requests made by agents of the four vessels and stating the dates of their expected arrivals, wharves were assigned for use for the purpose of assembling cargo beginning 7 days prior to the stated date of expected arrival. Each of those vessels failed to arrive on or about the day of its stated expected arrival. When one of the vessels arrived it was 16 days overdue, another was overdue 13 days, another 11 days, and the remaining one 4 days. There was no evidence as to the cause of the failure of the vessels or any of them to arrive on the stated dates of their expected arrival. Payment was made of part of the amount of the wharfage bill against each of the vessels; the part unpaid being the amount resulting from charging four cents a gross ton a day during the period between the stated date of expected arrival and the date of the beginning of the actual occupation of its berth by the vessel. The asserted liability of the vessels for those balances is contested.

[2, 3] The charges made being compensation for the use of the wharves by the vessels, and Congress having enacted no law on the subject, the question of the validity of those charges is governed by the law of Louisiana. Ouachita Packet Co. v. Aiken, 121 U. S. 444, 7 Sup. Ct. 907, 30 L. Ed. 976; Transportation Company v. Parkersburg, 107 U. S. 691, 2 Sup. Ct. 732, 27 L. Ed. 584; The Minnesota Rate Case, 230 U. S. 352, 405, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. The power to prescribe and collect rates of wharfage having been conferred on appellee without any specific limitation or restriction, the wharfage charges prescribed by it are enforceable, so far as they are not shown to be so excessive or exorbitant as to be unreasonable, involving oppression and an abuse of the power conferred. Cincinnati, etc., Packet Co. v. Catlettsburg, 105 U. S. 559, 26 L. Ed. 169; The Virginia Rulon, Fed. Cas. No. 16974; Silver v.

Tobin (C. C.) 28 Fed. 545; 40 Cyc. 909. The reasonableness of a wharfage charge is not dependent upon it being the same for the same use of the wharf for a given period of time, where the use during one such period is under circumstances or conditions different from those attending the use during another similar period, as in the case of two vessels, one of which does and the other does not comply with prescribed reasonable regulations; it not being forbidden to impose higher charges or penalties where there is a noncompliance with such regulations. Cincinnati, etc., Packet Co. v. Catlettsburg, supra.

[4] The propriety of making wharfage charges different under different circumstances or conditions has been recognized by this court. The Thomas Melville, 62 Fed. 749, 10 C. C. A. 619. It is permissible for the appellee, in its administration of the public wharves intrusted to its charge, to adopt and carry out the policy of having that property so used as to benefit the commerce of the port of New Orleans, to encourage the use of it by vessels actively engaged in commerce, to discourage the use of it for storage purposes only to the extent of interfering with its use by vessels requiring wharf accommodations, and to fix the rates to be charged with a view to the promotion of that policy. It is obvious that the usefulness of the wharves for what reasonably may be considered the primary purpose for which they were constructed and are maintained, namely, the furnishing of necessary facilities for vessels actively engaged in commerce, is impaired by practices resulting in unnecessarily keeping them from being used by vessels ready to use them and desirous to do so. It is equally obvious that such property is diverted from its principal use to the extent that it is used only for assembling and storing cargo destined for vessels expected to arrive for periods in excess of what reasonably is required to facilitate the doing of the business in which such vessels are engaged. Provisions of the above referred to tariff show that it was contemplated that a berth for a vessel might be reserved in advance of its arrival at the port. A regulation in that connection fixed 7 days as the period during which a wharf so reserved was permitted to be used, prior to the date of the vessel's expected arrival, for storing cargo destined for that vessel.

The agent for each of the vessels mentioned procured the assignment of a berth for it by representing that it was expected to occupy that berth on a date stated. Such appropriation of that space had the effect of rendering it unavailable for use by another vessel during the time for which it was so reserved. An effect of a vessel failing to occupy its berth at the time appointed would be that the wharf appropriated for its use would be withdrawn from the use intended to be made of it for the period of the vessel's delay in arriving. There was no impropriety in the appellee so graduating the wharfage charges it prescribed that its action in that regard would be effective in bringing about the use of the wharves in its charge by vessels presently needing them, and in keeping them from being appropriated for the use of vessels prior to the time of the existence of a need or reasonable occasion for such use. Appellee has the right to adopt reasonable rules and regulations to insure against vessels getting the use of wharves before they

are needed, to the detriment of vessels ready and willing to use them, and to enforce compliance with such rules or regulations by giving to a noncompliance therewith the effect of increasing the charge imposed for the use.

Complaint in behalf of the four vessels mentioned, on the ground that the wharfage bills against them were substantially more than they would have been if the vessels had occupied their berths at the time appointed, cannot be sustained without showing that under the circumstances those charges were unreasonable. Souther v. Gloucester, 187 Mass. 552, 73 N. E. 558, 69 L. R. A. 309. The evidence did not show that the failure of any one of the four vessels in question to occupy at the time appointed the berth reserved for it was due to a casualty, or to anything which was unforeseen when the berth was applied for. So far as appears, each of the vessels reached New Orleans as soon as any one connected with it had any reason to expect it to do so. The evidence showed that at the time the above-mentioned tariff was adopted, and while it was kept in force, the port of New Orleans was congested. As expressed in the testimony of T. S. McChesney, appellee's assistant general manager, the board was hard-pressed for room, and in imposing the charges provided for in that tariff was influenced by the idea of encouraging a greater turnover of the wharves, and of confining the use of them, so far as it was reasonably practicable to do so, to the service of vessels requiring facilities for handling freight in transit. The imposition of the complained of part of the wharfage charges against the four vessels in question resulted from their use of the wharves reserved for them under circumstances involving unauthorized suspension of the use of the wharves for permitted purposes, and the consequent probable deprivation of other vessels of the benefits of having the use of wharf facilities when they were needed. It was not made to appear that the imposition of the extra charges complained of for the use of the wharves under such circumstances was so unreasonable as to be oppressive and to amount to an abuse of the power conferred on appellee. It well may be inferred that ordinarily it is in the power of a vessel's agent to protect it from incurring such extra charges by correctly stating, sometime prior to the vessel's arrival, when it is really expected to occupy the berth reserved for it.

The question whether the extra charge provided for could or could not be enforced against a vessel which was delayed by reason of some mishap or unexpected casualty is not presented by the record. As above indicated, it was not shown that the failure of any one of the four vessels in question to occupy its berth at the time appointed was due to any such cause. There was evidence to the effect that not infrequently the extra charge was waived by the appellee, on application to it, accompanied by a showing of the existence of a reasonable excuse for a vessel's failure to arrive when it was due. The conclusion is that it was not made to appear that the appellee exceeded or abused its power by imposing the extra charge in question and enforcing it in the manner disclosed by the evidence adduced.

It follows that the decree appealed from was not erroneous. That decree is affirmed.