## Northern Kentucky Transportation Company v. City of Bellevue.

(Decided June 25, 1926.)

### Appeal from Campbell Circuit Court.

1. Trial—Civil Code, Providing when Equitable Actions Stand for Trial, Held Inapplicable where Court is One of Continuous Session (Ky. Stats., Sections 980-1019a-8; Civil Code of Practice, Section

364).—Practice in a court of continuous session is governed by Ky. Stats., sections 980-1019a-8, and Civil Code of Practice, section 364, providing when equitable actions stand for trial, is inapplicable.

2. Appeal and Error—Where no Material Issue of Fact was Made by Pleadings, Sustaining Motion to Submit Case Within 30 Days After Filing of Reply Held Not Error.—Where suit for injunction was begun December 19, and answer was filed February 20, and reply filed March 27, and no material issues of fact were made by pleadings, plaintiff was not prejudiced because of not having sufficient time to file additional affidavits, and there was no error in sustaining motion to submit case on April 21.

3. Automobiles—Motorbus Operator, having Failed to Take Out License Under Statute, Held not Exempt from Local Regulation (Acts 1924, c. 81 [Ky. Stats. Supp. 1924, Sections 2739j-1 to 2739j-29]).—Compliance with Acts 1924, c. 81 (Ky. Stats. Supp. 1924, sections 2739j-1 to 2739j-29), regulating and licensing automobile transportation companies, is condition precedent to claim of exemptions under section 27 from local ordinances as to license fees, and motorbus owner, having failed to comply therewith, cannot claim protection thereunder.

4. Automobiles—License Fee Under Ordinance, Approximating Two-Thirds of Cent on Each Motorbus Round Trip, Held Not Unreasonable.—License fee under city ordinance, amounting to $50.00 a year or approximately two-thirds of a cent for each round trip made by motorbus averaging 18 passengers, held not unreasonable, nor denial of right to engage in carriage of passengers for hire.

5. Automobiles—Ordinance requiring motorbus operator commencing business in latter part of year to pay full yearly license fee held not invalid.

6. Commerce—State or Municipality May Prescribe Uniform Regulations for Use of Highways by Motor Vehicles Engaged in Interstate Commerce and Charge License Fees therefor.—In absence of legislation by Congress, a state or municipality under its police power may prescribe uniform regulations for use of highways by motor vehicles engaged in interstate commerce, and charge license fees graduated according to horse power of engines or weight or capacity of vehicle, so long as regulations and fees are reasonable.

7. Automobiles—That Abutting Owners Paid Cost of Pavements Held Immaterial as to City's Power to License Motorbusses.—That street over which busses traveled was paved at expense of abutting property owners was immaterial as affecting validity of ordinance licensing motorbus travel thereon, where it was city's duty to maintan street and regulate traffic.

THOMAS W. HARDESTY for appellant.

GEORGE HEROLD for appellee.

Opinion of the Court by Judge Rees—Affirming.

The appellee, city of Bellevue, is a municipal corporation of the fourth class. The appellant is engaged in the business of operating motor busses, carrying passengers for hire, from a point in Dayton, Kentucky, through the city of Bellevue, then through the city of Newport, across a bridge over the Ohio river to Government square in Cincinnati, Ohio. The route of the busses is over Fairfield avenue, the main business highway of the city of Bellevue, and this avenue extends from appellee's east corporate boundary to its west corporate boundary, a distance of approximately 3,700 feet. There are eleven street crossings along this avenue and appellant's busses stop at each of these crossings for the purpose of taking on and discharging passengers. Appellant operates five busses, each bus having a seating capacity of 29 persons, and each makes about 19 round trips a day.

On January 11, 1923, the board of council of appellee passed an ordinance requiring persons, firms and corporations operating motor busses over and upon the streets and highways of the city, wherein passengers are carried for hire, to take out a license. Section 3 of the ordinance provides that the amount of the license shall be $25.00 per annum for each bus that has a seating capacity of 12 persons or less, and $50.00 per annum for each bus that has a seating capacity of 13 persons or more. Section 5 provides certain regulations as to places where passengers shall be taken on and discharged.

Appellant refused to pay the license tax and filed suit in the circuit court, alleging that the ordinance was void and praying that a temporary restraining order issue, restraining the appellee and its officials from attempting to enforce the ordinance, and that upon a final hearing it be granted a permanent injunction. After the issues had been completed the case was submitted over appellant's objection and judgment was entered dismissing the petition.

Appellant insists, upon appeal to this court, that the judgment should be reversed because (1) the case should not have been submitted until sixty days after the issues had been completed, (2) by the terms of chapter 81 of the Acts of 1924, the ordinance requiring auto transporta-

tion companies to pay a license tax has become inoperative, (3) the ordinance is void since it requires that a full year's license tax be paid, regardless of the time a bus may be in operation and because the amount of the tax is unreasonable and confiscatory, and (4) the ordinance can not apply to appellant as the license tax imposed therein is a burden on interstate commerce. 1. The action was submitted for final judgment over the objection of the appellant and the judgment rendered on April 21, 1926, the action having been instituted on December 19, 1925. The answer was filed on February 20, and a reply on March 27. A demurrer to the reply was sustained on April 3 and on April 14 another pleading styled a reply was filed. No issues of fact that are material were made by the reply, the only issues being of law raised by the pleadings. The Campbell circuit court being a court of continuous session its practice is governed by chapter 35, subdivision 3, of Carroll's Kentucky Statutes, and section 364 of the Civil Code has no application. In Hornick v. Holtrup, 25 Ky. L. R. 1030, 76 S. W. 874, the court's attention was evidently not called to section 996 of the Kentucky Statutes, which clearly repeals section 364 of the Civil Code in so far as practice in courts of continuous session is concerned. An action may be placed on the equity trial docket when the time allowed to plead has expired, without such pleading being filed, provided, that if any issue shall have been formed, thirty days shall have expired since it was formed and every pleading subsequent to the answer must be filed in fourteen days after the pleading is filed to which it responds, unless the time for pleading is extended by the court. Kentucky Statutes, sections 996 and 1005.

However, in this case, all material facts were admitted by the pleadings and no issue of fact was made which could have influenced the judgment and the appellant was not prejudiced on account of not having sufficient time to file additional affidavits. The court, therefore, did not err in sustaining a motion to submit the case. Horning v. Fiscal Court, 187 Ky. 87, 218 S. W. 989.

2. The appellant insists that by the terms of chapter 81 of the 1924 Acts of the General Assembly (section 2739j-1-27-29, Carroll's Kentucky Statutes, 1924 edition) the municipalities of the state have lost whatever power they may have theretofore had to license automobile

transportation companies. The act in question provides for the regulation and licensing of automobile transportation companies using the highways of the state of Kentucky, and subsection 27 is as follows:

"On an auto transportation company's complying with the provisions of this act all local ordinances, resolutions, bylaws, rules and license fees in force shall cease to be operative as to them, except the municipalities and other local subdivisions may make reasonable local police and traffic regulations, subject to any and all state traffic regulations and regulations within their boundaries not inconsistent with the provisions of this act."

It is admitted that appellant has neither applied for nor taken out a license under the act in question. The legislature clearly intended that a compliance with the act should be a condition precedent to a claim of exemption under subsection 27, above quoted. The appellant cannot claim protection under this subsection of the act and at the same time admit its failure to comply with the act. If the character of its business brings it within the meaning of the act then it can, by complying with the state law, render all local ordinances inoperative as to it in so far as such ordinance attempt to place a license tax on automobile transportation companies. Childress, Police Judge v. Riggs, 212 Ky. 225, 278 S. W. 575.

3. Each bus operated by the apppellant makes an average of 19 round trips a day and carries an average of 18 passengers on each trip. The license fee provided by the ordinance in question amounts to $50.00 a year, or approximately 13½ cents a day on each bus operated by appellant, or approximately two-thirds of a cent for each round trip made. It cannot be said that the license fees set out in the ordinance are unreasonable or amount to a denial of the right of appellant to engage in the occupation of carrying passengers for hire. The contention of appellant that the ordinance is invalid because it provides that licenses shall expire on December 31 of the year for which issued and no less than a full year's license fee shall be paid is likewise untenable. In Botes v. City of Franklin, 203 Ky. 357, 262 S. W. 282, the validity of an ordinance with a similar provision was upheld, the court saying: "The general rule upon this subject is stated as follows: If a statute authorizing the levy of a fixed amount as an annual business license makes no provision for a pro rata license, a person com-

mencing business in the latter part of the year must pay the full amount of the license required to be assessed.''

4. It is further contended by appellant that the license fees imposed under the ordinance in question amount to a burden on interstate commerce and that the ordinance, therefore, violates the commerce provision of the federal Constitution and is void. Congress has not exercised the power given it by the Constitution to regulate commerce among the several states so far as the licensing of automobiles and automobile transportation companies is concerned, and in the absence of legislation by Congress it has been uniformly held that a state or municipality may prescribe uniform regulations for the use of its highways by motor vehicles and charge license fees graduated according to the horse-power of the engines or weight or seating capacity of the vehicle, so long as such regulations and fees are reasonable although they may incidentally affect interstate commerce. The right of a state or municipality to regulate the use of its highways and to impose a license fee for the use thereof is recognized by the courts on the ground that such regulation and licensing are proper exercises of its police power, and further that it has a right to exact a reasonable compensation for the use of its highways.

It is a well recognized fact that the rapid growth in automobile traffic in recent years has created tremendous problems for states, counties and cities in maintaining their highways. This traffic is extremely destructive of those types of roads and streets that were entirely satisfactory and adequate before the automobile came into general use. Now, more expensive and enduring types of roads must be constructed and more costly maintenance provided.

Appellant says that Fairfield avenue over which its busses travel and which is of brick construction was constructed at the expense of abutting property owners. Whether or not appellee paid any part of the original construction cost is immaterial. It is appellee's duty to maintain the street and regulate the traffic thereon.

In Hendrick v. Maryland, 235 U. S. 610, 59 L. Ed. 385, the validity of a Maryland statute prescribing a comprehensive scheme for licensing and regulating motor vehicles was in question. The statute applied to non-residents and it was maintained that the act was void because it attempted to regulate interstate commerce. The court said:

"The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads, the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the states for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic the state of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own jurisdiction the state put into effect the above-described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious.

"In the absence of national legislation covering the subject a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles — those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse-power of the engines—a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce. · The reasonableness of the state's action is always subject to inquiry in so far as it affects interstate commerce, and in that regard it is likewise subordinate to the will of Congress."

And further:

"In view of the many decisions of this court there can be no serious doubt that where a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation there-

for. The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair and practical standard they constitute no burden on interstate commerce. Transportation Co. v. Parkersburg, 107 U. S. 691; House v. Glover, 119 U. S. 543, 548, 549; Monongahela Navigation Co. v. United States, 148. U. S. 312, 329, 330; Minnesota Rates Cases, 230 U. S. 352, 405; and authorities cited. The action of the state must be treated as correct unless the contrary is made to appear. In the instant case there is no evidence concerning the value of the facilities supplied by the state, the cost of maintaining them, or the fairness of the methods adopted for collecting the charges imposed; and we cannot say from a mere inspection of the statute that its provisions are arbitrary or unreasonable.''

Mr. Justice McReynolds in a separate opinion in Frost v. Railroad Commission of California, decided by the Supreme Court on June 7, 1926, well said: ''The states are now struggling with new and enormously difficult problems incident to the growth of automotive traffic, and we should carefully refrain from interference unless and until there is some real, direct and material infraction of rights guaranteed by the federal Constitution.''

Hendrick v. Maryland, *supra*, was cited in Camas Stage Co. v. Kozer, 104 Or. 600, 209 Pac. 95, 25 A. L. R. 27, wherein the court sustained the validity of an Oregon statute which provided for registration fees on motor vehicles ranging from $15.00 on vehicles weighing 1,700 pounds or less to $97.00 on those weighing over 5,700 pounds. In addition to the fees prescribed according to the weight motor busses were required to pay $4.00 for each passenger space. The complaining company operated passenger busses for hire between Portland in the state of Oregon and Seattle in the state of Washington, and insisted that the statute, in so far as it attempted to require it to pay an annual license fee, or tax, upon each of its motor vehicles, was void, in that it was in contravention of the commerce clause of the federal Constitution. The court said:

''Congress has exercised the power granted it in relation to interstate commerce in a variety of acts, but it has passed no statute that in any way

inhibits the exaction by the state of the fees in question by way of compensation from the plaintiff for the privilege of driving its motor cars over the highways of this state. State laws may affect interstate commerce without conflicting with the constitutional provisions appealed to. . . .

"If it be a fact that the enforcement of this act in the case at issue may incidentally affect inter state commerce, such regulations will not be for that reason declared invalid. They are lawful until Congress acts."

In Liberty Highway Co. v. Michigan Public Utilities Commission, 294 Fed. 703, the court had before it for construction an act of the legislature of the state of Michigan which required the payment of a license fee and compliance with certain regulations of those persons operating motor vehicles for hire on the public highways of the state. The court said:

"The commercial clause of the federal Constitution does not, however, deprive the state of the right to reasonably regulate under their police power the use of their public highways, and to that end to require a license and impose a reasonable charge therefor, for the privilege of such use, even if thereby interstate commerce is incidentally affected, provided that such regulation, license, and charge bear a reasonable relation to the safe and proper maintenance and protection of such highways, do not obstruct or burden interstate commerce, and are not in conflict with federal legislation on the same subject enacted within constitutional limitations: . . .

"The amount of the privilege tax for the use of the highways need not necessarily be limited, even to those engaged in interstate commerce, to the actual cost of such regulation, but may also, as apparently is the case here, include reasonable compensation for the use of the highways and fair provision for anticipated repairs and improvements thereon."

Other cases in accord with the above cases are as follows: Kane v. New Jersey, 242 U. S. 160; 61 L. Ed. 222; Michigan Public Utilities Com. v. Duke, 266 U. S. 570, 69 L. Ed. 445; Red Ball Transit Co. v. Marshall, 8 Fed. (2nd) 635; Cannon Ball Transportation Co. v. Pub-

lic Utilities Commission (Ohio), 149 N. E. 713; Mackay
Telegraph & Cable Co. v. Little Rock, 250 U. S. 94, 63
L. Ed. 863; Buck v. Kuykendall, 267 U. S. 307, 69 L. Ed.
623; Cincinnati, etc., Packet Co. v. Catlettsburg, 105 U. S.
559, 26 L. Ed. 1169.

We are of the opinion that the license fees imposed
by appellee do not constitute a burden on interstate com-
merce and that the lower court did not err in dismissing
appellant's petition.

For the reasons indicated the judgment is affirmed.