## Blue Coach Lines, Inc. v. Lewis, et al.

## Reo Bus Lines Company v. Fuller, Sheriff.

(Decided February 4, 1927.)

(Rehearing Denied June 24, 1927.)

## Appeals from Franklin Circuit Court.

1. Taxation.—Ky. Stats., section 4077, prior to amendment by Acts 1926, c. 75, providing that certain enumerated companies and "every other like company, corporation, or association, . . . having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service," shall pay a franchise tax, held to cover duly licensed operators of bus lines on public highways.

2. Constitutional Law.—Police power includes right to regulate by statute all occupations, which, by their prosecution, actually injure or are highly calculated to injure members of the public.

3. Licenses.—Authority under police power to regulate occupations tending to injure public carries with it power to collect fees, which, in the aggregate, are sufficient to defray administrative expenses, and to also repair any special injuries attributable to the occupation regulated or to the means and instrumentalities employed by it.

4. Licenses.—Fees and charges against operators of bus lines on public highways, imposed by Acts 1924, c. 81, as amended by Acts 1926, c. 112, measured by capacity, weight, and tag charge, held, not an ordinary occupation tax levied solely for general revenue, but a charge exacted for regulation and to repair injuries, being in the nature of rent for highways plus sum for expense of administration so that charge is not double taxation, by reason of Ky. Stats., section 4077, imposing a franchise tax on operators of bus lines.

5. Taxation.—Franchise tax, imposed on operators of bus lines by Ky. Stats., section 4077, is not for regulation and repair of injuries, but is an ad valorem property tax on the value of the special privilege enjoyed.

6. Carriers.—Fees and charges imposed for police purposes on operators of bus lines by Acts 1924, c. 81, as amended by Acts 1926, c. 112, held not illegal because measured by seating capacity and weight of bus and charge for tag required of each bus, thus being mere means of estimating the charge that each bus should bear.

R. W. KEENON for appellants.

F. E. DAUGHERTY, Attorney General, GARDNER K. BYERS, Assistant Attorney General, JOHN W. FARMER and JAMES PARK for appellees.

## OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The questions involved in these two appeals are (1) whether duly licensed and qualified operators of bus lines, over the public highways between fixed termini, are liable to pay a franchise property tax, as provided by section 4077 of the present Kentucky Statutes before it was amended by chapter 75, Acts of 1926, so as to expressly include them, and if so, then may the commonwealth assess and collect such franchise tax both before and since the amendment referred to, and also collect the specified and graduated fees and charges provided by chapter 81, section 19, of the Acts of 1924, and the additional ones provided for by section 27 of chapter 112 of the amendatory Act of 1926 when it became effective? The two actions were brought in different courts. The first one in the caption was filed and heard in the Franklin circuit court, and the second one was filed and heard in the Fayette circuit court. The petitions in each raised and presented the above stated questions, and both courts by their judgments answered them in the affirmative and dismissed the petitions, and from those judgments the plaintiffs, who are the appellants here, prosecute these

appeals which have been consolidated and ordered heard together.

The action in the Franklin circuit court was brought against the members of the state tax commission and the commissioner of motor transportation, and sought to enjoin the tax commissioners from certifying any franchise valuation for taxation against the plaintiff in the action either before or since the amendment to section 4077, supra, and, if that should not be done, then to enjoin the commissioner of motor transportation from collecting any of the license fees or charges, under chapter 81 of the 1924 Acts, or chapter 112 of the 1926 Acts, supra, because, as alleged, no such franchise tax was permissible before the amendment to section 4077, but, if so, then the collection by the commissioner of motor transportation of the fees and charges in the chapter referred to would be double taxation, and therefore unconstitutional and void. The Fayette county action only sought to enjoin the sheriff of that county from collecting the certified franchise tax by the members of the tax commission. In each action plaintiffs averred full compliance by them of the requirements in chapters 81 of the 1924 Act and 112 of the 1926 Act, with reference to the payment of license fees and charges therein specified.

It is argued that plaintiffs in no event are liable for a franchise tax, under the provisions of section 4077, before such occupations were expressly enacted into it by the amendment thereto in 1926. That section before the amendment, and so far as pertinent to the question, reads:

"Every railway company or corporation, and guarantee or security company, gas company, water company, ferry company, bridge company, street railway company, express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace car company, dining car company, sleeping car company, chair car company, and every other like company, corporation or association, also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service, shall, in addition to other taxes imposed on it by law, annually pay a tax on its franchise to the state, and

a local tax thereon to the county, incorporated city, town or taxing district, where its franchise may be exercised.

The 1926 amendment added to the enumerated lists of occupations liable to such a tax that in which each plaintiff is engaged, but it is our conclusion that the language of the section before that amendment was sufficiently broad to include the business of plaintiffs conducted in the manner it is, and that the amendment only rendered certain that which was, to say the least of it, unsettled.

It will be noted that, immediately following the enumerated lists of occupations subject to the taxation contained in the original section, there is this language:

"And every other like company, corporation, or association, also every other corporation, company or association having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons, or performing any public service."

It will be presumed that the Legislature meant something by employing that general language in the statute, and that "something" could have been nothing more or less than to include, as subject to a franchise tax, other corporations and associations than those enumerated, which were "every other like company, corporation, or association," and also those "having or exercising any special or exclusive privilege or franchise not allowed by law to natural persons," or such as performed "any public service." It was the conception of the Legislature that all companies so engaged possessed certain privileges not allowed by law to natural persons, and which augmented the value of their property to the extent of the value of such privilege, and which privilege is the right (or franchise) to operate that particular business, and is one of a special nature not allowed by law to natural persons. Generally speaking, a natural person may ordinarily engage in any lawful occupation, but if the occupation is such as to authorize and justify the police power to limit the number of those who may engage in it, and to withhold the privilege except upon validly enumerated conditions, then it becomes special and exclusive, or limitedly so, in its nature; and it would seem to inevitably

follow that one who embarked in it under such circumstances, and especially if in doing so he was performing a public service, he would be included in the general language, supra, of the section immediately following the enumerated occupations. We have so held in a number of cases, some of which are found in the notes to the section. See also, Reo Bus Lines Co. v. Southern Bus Line Co., 209 Ky. 40, 272 S. W. 18.

The 1926 amendment therefore was but declaratory of a right to assess and collect the franchise tax therein provided for as it existed prior to that amendment; from which it follows that plaintiffs are liable for the complained of franchise tax both before and since the 1926 amendment to section 4077. That being true, the next question is: Are plaintiffs also liable for the license fees and charges provided for by chapter 81 of the 1924 Act and chapter 112 of the 1926 Act, which is amendatory to the 1924 Act?

In arguing that a negative answer should be given to the question, learned counsel for plaintiffs strenuously insists that to collect such license fees and charges would be double taxation, which it is insisted is prohibited by our Constitution. If, however, it should be conceded that the license fees and charges were solely for the purposes of revenue, and were therefore a second or double taxation (the ad valorem assessment on the corporal and franchise valuation of defendant's property being the first one), then it would not contravene any provision of our Constitution unless discriminatory, and it is not so when the fees and charges are exacted of all who come within a valid classification. Moreover, we think the power and authority to levy and collect the license fes and charges attacked herein may be justified as a valid exercise of the police power. Smith v. Commonwealth, 175 Ky. 286, 194 S. W. 367, and cases therein referred to. We will not attempt a definition of it in this opinion, since learned authors have written volumes upon the subject and which may be found in the average library of the practitioner. Whatever else it may include, it is certain that it does include the right to control and regulate by statute all occupations that, as a result of their prosecution, actually produce, or are highly calculated to produce, injury, damage and hurt to individual members of the public or public property (6 R. C. L. pages 217 and 224, paragraphs 211 and 217), and the authority to regulate such occupations

under the police power carries with it the additional right to assess and collect fees, which, in the aggregate, are sufficient to defray the necessary administrative expenses in enforcing the statute, and also a sum sufficient to repair any special injuries attributable to and produced by the activities of the thing regulated, or produced by the use of the means and instrumentalities employed in the occupation from which the license fees and charges are exacted. Differently stated, under the exercise of the police power it is competent for the sovereignty to demand and collect fees and charges, which, in the aggregate, will pay the expenses of administering the law, plus an additional amount sufficient to repair all injuries which are liable to be produced by the activities of the thing, or the prosecution of the occupation which the statute undertakes to license and regulate under that power. 17 R. C. L. page 539, par. 56, and cases in note 4 to the text, and the Smith case, supra.

In the case of Mountain Timber Co. v. Washington, 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642, the Supreme Court entered into an elaborate discussion of the limits and scope of the police power, and in the opinion it was said that "it is not novel" for the collection of fees and charges thereunder to be "proportioned to special injuries attributable to the activities taxed," and the cases of Noble State Bank v. Haskell, 219 U. S. 104, 31 S. C. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385, and Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222, are cited in support of that statement. The Haskell case involved the question of the right of the state of Oklahoma to collect from banks a small fee for the purpose of creating a fund to take care of losses sustained on account of the insolvency of banks, and the Supreme Court upheld it. In the Hendricks and Kane cases it upheld statutes of Maryland and New Jersey exacting fees and charges similar to the ones involved here and which plaintiffs attacked, and those two cases were referred to and approved by us in the recent case of Northern Ky. Transportation Co. v. City of Bellevue, 215 Ky. 514, 285 S. W. 241. See, also, the case of Benjamin H. Clark et al v. George T. Poor et al., 47 S. Ct. 702, 71 L. Ed. —, from the Supreme Court of the United States, decided May 31, 1927.

In the case of McGlone v. Womack, 129 Ky. 274, 111 S. W. 688, 33 Ky. Law Rep. 811, 864, and 17 L. R. A. (N. S.) 855, we upheld the right of the Legislature in a statute enacted in 1906 (Acts 1906, c. 10) to levy a license fee on dogs, and which is commonly known as the "dog law," not upon the theory that the fee was strictly a tax, but was a legitimate charge under the regulatory provisions of the statute enacted under the police power of the state, and that the prescribed fee was no more than sufficient to repair the injuries produced by dogs (the thing taxed) to sheep and stock by either killing or injuring them, and to pay the cost of administration. In the still later case of Shadoan v. Barnett, 217 Ky. 205, 289 S. W. 204, we expressly referred to and approved the principle upon which such fees and charges were permissible, as stated by the Supreme Court in the Mountain Timber case, supra.

Here, the various fees, howsoever measured and calculated in chapter 81 of the 1924 Acts and in chapter 112 of the 1926 Acts, when collected, are not shown to produce a fund in excess of the expenses of administering the law plus a fund sufficient to repair injuries and damages to the highways of the state over which plaintiffs operate the vehicles employed in their business. It is not an ordinary occupation tax, levied solely for the production of general revenue, but, we repeat, is essentially a fund produced by fees and charges, exacted solely for regulation and repair. In other words, it is in the nature of rent or hire for the use of the public highway, with the additional sum for expenses in the administration of the law.

At this point, however, it is insisted that the franchise tax is for the same purpose, but in making that contention counsel is entirely mistaken. Numerous are the cases decided by this court in which it was held that the tax provided by section 4077, supra, was essentially an ad valorem property tax levied on the value of the special, or exclusive, or quasi exclusive privilege enjoyed by the particular taxpayer from whom it was demanded. Two of such cases are Commonwealth by, etc., v. Walsh's Trustee, 133 Ky. 103, 117 S. W. 398, and Commonwealth v. Louisville Gas Co., 135 Ky. 324, 122 S. W. 164. Numerous other cases are to the same effect and none to the contrary. The tax collected therefore is entirely distinct from license fees and charges imposed under the

regulatory provisions of police legislation, and the purposes for which such taxes and fees are levied and collected are equally as widely separated. It is altogether unlike the case of Cumberland Telephone & Telegraph Co. v. Hopkins, Police Judge, etc., 121 Ky. 850, 90 S. W. 594, 28 Ky. Law Rep. 846, and relied on by counsel for plaintiff, since in that case the attacked license fee and charge could, in no sense, be justified under the police power and was, in fact, not attempted to be bottomed thereon, and because the telephone company had paid all the taxes that could be legally assessed against it, it was held that the fees and charges there involved were unauthorized and illegal. We are dealing with an entirely different case here.

But it is insisted that the fees and charges prescribed by the 1924 and 1926 motor bus acts are illegal because they are measured by (a) the seating capacity, and (b) the weight of each bus, and also (c) a charge for the tag required for each of them. But we cannot agree therewith because they are each but methods of estimating the aggregate fees and charges that each bus should contribute for the police purposes hereinbefore enumerated. The same result would have been obtained if the aggregate of such fees and charges had been assessed against any one of the particular selections mentioned.

From the foregoing, it is apparent that none of the contentions made by plaintiffs is meritorious, and that each judgment appealed from was proper. Wherefore they are each affirmed.

Whole court sitting.