# OUACHITA PACKET COMPANY *v.* AIKEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Argued January 5, 1887. — Decided April 25, 1887.

Wharfage is, in the absence of Federal legislation, governed by local state laws, and if the rates authorized by them and by municipal ordinances enacted-under their authority are unreasonable, the remedy must be sought by invoking the laws of the state.

A municipal ordinance of New Orleans which authorizes the collection of a wharfage rate, to be measured by the tonnage of the vessels which use the wharves, and estimated to be sufficient to light the wharves, and to keep them in repair, and to construct new wharves as required, and which may realize a profit over these expenses, is *held* not to conflict with the Constitution or with any law of the United States.

IN equity. Decree dismissing the bill. Complainants appealed. The case is stated in the opinion of the court.

*Mr. John H. Kennard* for appellants. *Mr. William Wirt Howe* was with him on the brief.

*Mr. William S. Benedict* for appellees. *Mr. George Denegre* and *Mr. Thomas L. Bayne* were with him on the brief.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The bill in this case was filed in the Circuit Court of the United States by the appellants, for themselves and all others in like interest who should come in and contribute to the expenses of the suit, against Catherine M. Aiken, administratrix of Joseph A. Aiken, and others, residents of New Orleans, doing business under the firm name of Joseph A. Aiken & Co., and against the city of New Orleans. The complainants are owners of steamboats plying between New Orleans and other ports and places on the Mississippi River and its branches in other states than Louisiana; and the burden of their complaint is, that the rates of wharfage which they are

compelled to pay for their vessels at New Orleans are unreasonable and excessive; are really duties of tonnage, and imposed in violation of the Constitution of the United States. The defendants, Joseph A. Aiken & Co., at the time of filing the bill, were lessees of the public wharves belonging to the city of New Orleans, under a lease from the city made in May, 1881, for the term of five years; and, as such lessees, charged and collected the wharfage complained of. The object of the bill, as shown by its prayer, was to obtain an injunction to prevent the defendants from exacting the excessive charges referred to, the complainants expressing a willingness to pay all reasonable wharfage.

The bill alleges that on the 17th of January, 1875, the council of the City of New Orleans adopted an ordinance, "fixing and regulating charges for wharfage, levee, and other facilities afforded by the city of New Orleans to commerce," by which ordinance, among other matters and things, it was ordained that the wharfage dues on all steamboats shall be fixed as follows: "Not over five days, ten cents per ton, and each day thereafter, five dollars per day; boats arriving and departing more than once a week, five cents per ton each trip; boats lying up for repairs during the summer months to occupy such wharves as may not be required for shipping, for thirty days or under, one dollar per day." The entire ordinance was filed with the bill as an exhibit, showing the rates of wharfage to be charged for vessels of every kind.

The bill then states, that on the 17th of May, 1881, the council of the city adopted an ordinance directing the administrator of commerce to advertise for sealed proposals for the sale of the revenues of the wharves and levees for the term of five years, upon certain conditions specified, amongst which were the following, viz: to keep the wharves and levees in good repair; to construct such new wharves as might be necessary, not exceeding the expenditure, in any one year, of $25,000; to light the wharves with electric lights; and to pay the city annually the sum of $40,000, of which $30,000 should be devoted to the maintenance of a harbor police for the protection of commerce, and the remaining $10,000 should be

devoted exclusively to the payment of salaries of wharfingers, signal officers, and other employes on the levees. The sale was to be adjudicated to the persons who should agree to charge the lowest rates of wharfage. Joseph A. Aiken put in a proposal to take the lease on the conditions specified, at the rates of wharfage named in the ordinance of 1875, with certain reductions which he agreed to make from time to time; and this proposal was accepted by the council.

The power to construct and maintain levees and wharves, and to prescribe and collect rates of levee dues and wharfage, had been conferred upon the city council by its charter, act of March 16, 1870, no. 7, § 12; and, by the act of March 13, 1871, it was authorized to lease the wharves, upon adjudication, for any term not to exceed ten years at a time. Laws of 1871, no. 48, § 7.

The point raised by the complainants is, that the rates of wharfage proposed by the lessees were necessarily enhanced by the condition requiring them to erect new wharves, to maintain electric lights, and to pay the city $40,000 per annum for the maintenance of a harbor police, and the payment of salaries to wharfingers, &c. They argue, therefore, that the rates agreed to be charged were intended, not merely as compensation for the use of wharves already constructed, but as a tax to raise money for the use of the city, to enable it to do those things the expense of which should be defrayed from its general resources; it being contended that wharfage cannot be charged for the purpose of raising money to build wharves, but only for the use of them when built. The complainants contend that the charges are unreasonable and excessive as wharfage, and, therefore, unauthorized as such, and, in effect, a direct duty, or burden, upon commerce. They offered a good deal of evidence to show that the rates of wharfage charged are onerous and excessive, and that, without the conditions referred to, the lessees could have offered to take much lower rates; or, at all events, that much lower rates would have been a reasonable and sufficient compensation. On the other hand, the defendants offered evidence to show that the rates were reasonable, and that, with the same or even higher

rates, the city itself, before leasing out its wharves, lost every year a large amount of money in their administration. The court below declared "that the exactions of wharfage are substantially expended for the benefit of those using the wharves, and that the proof does not satisfy us that the rates are exorbitant or excessive." *Ouachita Packet Co.* v. *Aiken*, 4 Woods, 208, 213. We do not think it necessary to scrutinize the evidence very closely. With the Circuit Court, we see nothing in the purposes for which the lessees were required to expend or pay money, at all foreign to the general object of keeping up and maintaining proper wharves, and providing for the security and convenience of those using them. The case is clearly within the principle of the former decisions of this court, which affirm the right of a state, in the absence of regulation by Congress, to establish, manage and carry on works and improvements of a local character, though necessarily more or less affecting interstate and foreign commerce. We may particularly refer to the recent cases of *Transportation Co.* v. *Parkersburg*, 107 U. S. 691; *Morgan Steamship Co.* v. *Louisiana*, 118 U. S. 455; and *Huse* v. *Glover*, 119 U. S. 543; in which most of the former decisions involving the same principle are cited and referred to. The first of these was a case of wharfage; the second, one of quarantine; and the third, that of a lock in Illinois River constructed by the State of Illinois in aid of navigation. The same principle was applied and enforced in the cases of *Cooley* v. *Board of Wardens of Philadelphia*, 12 How. 299, on the subject of pilotage; in *Mobile* v. *Kimball*, 102 U. S. 691, where a state law provided for the improvement of the river and harbor of Mobile; in the various cases of bridges over navigable rivers which have come before this court, and which are reviewed and approved in *Escanaba Co.* v. *Chicago*, 107 U. S. 678; and in *Turner* v. *Maryland*, 107 U. S. 38, which related to the inspection of tobacco. The same principle was reaffirmed, with the limitations to which its application is subject, in the recent case of *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, 493. In all such cases of local concern, though incidentally affecting commerce, we have held that the courts of the United

States cannot, as such, interfere with the regulations made by the State, nor sit in judgment on the charges imposed for the use of improvements or facilities afforded, or for the services rendered under state authority. It is for Congress alone, under its power to regulate commerce with foreign nations and among the several states, to correct any abuses that may arise, or to assume to itself the regulation of the subject. If, in any case of this character, the courts of the United States can interfere in advance of Congressional legislation, it is, (as was said in *Morgan* v. *Louisiana, qua supra*,) where there is a manifest purpose, "by roundabout means, to invade the domain of Federal authority."

Wharfage, the matter now under consideration, is governed by the local state laws; no act of Congress has been passed to regulate it. By the state laws, it is generally required to be reasonable; and by those laws its reasonableness must be judged. If it does not violate them, as before said, the United States courts cannot interfere to prevent its exaction. Of course, neither the state, nor any municipal corporation acting under its authority, can lay duties of tonnage; for that is expressly forbidden by the Constitution; but charges for wharfage may be graduated by the tonnage of vessels using a wharf; and that this is not a duty of tonnage, within the meaning of the Constitution, has been distinctly held in several cases; amongst others, in those of *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Packet Co.* v. *St. Louis*, 100 U. S. 423; *Packet Co.* v. *Catlettsburg*, 105 U. S. 559; and *Transportation Co.* v. *Parkersburg*, 107 U. S. 691.

The charges in the present case are professedly for wharfage, and we see nothing in the ordinance fixing the rates inconsistent with the idea that they are such. The city, by its charter, had the power to fix the rates of wharfage, and it established those now complained of. We do not see the slightest pretext for calling them anything else than wharfage. The manner in which the receipts are to be appropriated does not change the character of the charges made. In the case of *Huse* v. *Glover*, 119 U. S. 543, 549, it was said: "By the terms tax, impost, duty, mentioned in the ordinance, [the Ordinance of 1787,] is meant a charge for the use of the government, not

compensation for improvements. The fact that if any surplus remains from the tolls, over what is used to keep the locks in repair, and for their collection, it is to be paid into the state treasury as a part of the revenue of the State, does not change the character of the toll or impost. In prescribing the rates it would be impossible to state in advance what the tolls would amount to in the aggregate. That would depend upon the extent of business done, that is, the number of vessels and the amount of freight which may pass through the locks. Some disposition of the surplus is necessary until its use shall be required, and it may as well be placed in the state treasury, and probably better, than anywhere else." And in the case of *Transportation Co.* v. *Parkersburg*, we said: "It is also obvious that since a wharf is property, and wharfage is a charge or rent for its temporary use, the question whether the owner derives more or less revenue from it, or whether more or less than the cost of building and maintaining it, or what disposition he makes of such revenue, can in no way concern those who make use of the wharf and are required to pay the regular charges therefor; provided, always, that the charges are reasonable and not exorbitant."

In the present case, however, as already indicated, the appropriation actually made of the receipts, namely, to the objects of keeping the wharves in repair, of gradually extending them as additions may be needed, and of maintaining a police for their protection, and lights for their better enjoyment, is entirely germane to the purpose of wharfage facilities. It is what any prudent proprietor would do; it is what the city itself would do if it managed the wharves on its own account. But even if it were otherwise; if a profit should happen to be realized, by the city, or the lessees, beyond the amount of expenditures made, this would not make the charges any the less wharfage. And being wharfage, and nothing else, if the charges are unreasonable, remedy must be sought by invoking the laws of the state, which cannot be done in this suit, inasmuch as the jurisdiction of the court is rested on the supposed unconstitutionality of the charges for wharfage, and not on the citizenship of the parties. If the

state laws furnish no remedy; in other words, if the charges are sanctioned by them, then, as before stated, it is for Congress, and not the United States courts, to regulate the matter, and provide a proper remedy. Such an interposition may become necessary; for although the imposition of unreasonable wharfage by a city or a state is always the dictate of a suicidal policy, the temptation of immediate advantage under stringent pressure will often lead to its adoption.

What measures Congress might adopt for the purpose of preventing abuses in this and like matters, it is not for us to determine. It is possible that a law declaring that wharfage shall be reasonable, and not oppressive, would answer the purpose. It would, then, be in the power of the Federal courts to inquire and determine as to the reasonableness of the charges actually imposed. That no such inquiry, except in the administration of the state law, can be instituted, as the law now stands, is shown in some of the cases to which we have referred. In *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, 700, we said: "It is an undoubted rule of universal application, that wharfage for the use of all public wharves must be reasonable. But then the question arises, by what law is this rule established, and by what law can it be enforced? By what law is it to be decided whether the charges imposed are, or are not, extortionate? There can be but one answer to these questions. Clearly it must be by the local municipal law, at least until some superior or paramount law has been prescribed. . . . The courts of the United States do not enforce the common law in municipal matters in the States because it is Federal law, but because it is the law of the State."

As the only question determinable in this suit is whether the charges of wharfage complained of were, or were not, contrary to the Constitution or any law of the United States, and as it is clear that they were not, the decree of the Circuit Court must be

*Affirmed.*