## LEITCH et al. v. CITY OF CHICAGO et al.
### No. 4238.

Circuit Court of Appeals, Seventh Circuit.

May 23, 1930.

Rehearing Denied Aug. 19, 1930.

To the best of our understanding the bill charges that appellees, who are officials of the state of Illinois and of the city of Chicago, are threatening to fill up a navigable stream which is wholly within the limits of the city of Chicago, and bordering on which appellants have a piece of real estate which will thereby be injured.

What we term the "bill," is on its face. termed the "Second Amendment of the Original Bill Filed on the 29th Day of June, 1927." But it is in fact an amended bill. Certain officers of the city filed a motion to dismiss the bill on the ground that it does not state a cause of action within the jurisdiction of the court.

In the absence of specification by the court of the rule or rules transgressed, we seek it in appellees' brief, and find it there stated to be Supreme Court Equity Rules 25, 21, and 28 (28 USCA § 723), and District Court Rules 13 and 19.

Rule 25 requires that bills in equity contain a short plain statement of the grounds of the court's jurisdiction, and short simple statement of the facts on which relief is sought, omitting statement of evidence. We shall hereinafter consider the matter of jurisdictional grounds, as stated in the bill. The facts of the bill do not appear to us to be stated with undue prolixity. Their sufficiency to support the prayer of the bill is another matter. Rule 21 provides that the court may on its own motion strike out redundant, impertinent, or scandalous matter. This has no bearing, as the court did not act on it. Rule 28 provides that plaintiff may amend his bill on leave of court, and it is complained that, while leave was given to amend the bill, plaintiffs filed an entirely new bill. This shows no violation of that rule. At any rate there was no motion to strike the new bill for that cause. Rule 13 of the District Court prescribes that amendments must be made on separate paper unless otherwise ordered by the court. This rule was not transgressed by embodying the amendments in an entirely separate instrument constituting a complete new bill. Rule 19 requires that chancery pleadings be printed before the cause is heard by the court. The record does not disclose whether or not this bill was printed, and we cannot assume that the rule was not observed.

It is quite unlikely that on any such grounds alone the court would have ordered dismissal of the bill without first giving opportunity for compliance with the rules, if transgressed.

Olive Leitch, of Chicago, Ill., for appellants.

Albert Veeder, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a decree of the District Court denying appellants' motion for a preliminary injunction and directing that the bill be "dismissed for want of jurisdiction and for noncompliance with equity rules of this court."

The question of want of federal jurisdiction appearing on the face of the bill involves consideration of some details. Appellants contend that federal jurisdiction is shown, first, by the allegation of diversity of citizenship of the parties, and the controversy involving more than $3,000; second, irrespective of diversity of citizenship, through the controversy being one respecting navigable waters of the United States over which the United States has jurisdiction; and, third, transgression of appellants' federal constitutional rights in the alleged undertaking to deprive them of their property without just compensation.

As to the citizenship, it appears from the bill that of the two plaintiffs alleged to be the owners in fee simple of the property in question, one resides in California and the other in Illinois. Where jurisdiction depends on diversity of citizenship, it is the general rule that, where one or more of several plaintiffs resides in the same state with the defendants, the necessary diversity of citizenship for federal jurisdiction does not appear. Ouachita & M. R. Packett Co. v. Aiken et al. (C. C.) 16 F. 890, affirmed 121 U. S. 444, 7 S. Ct. 907, 30 L. Ed. 976; Danks v. Gordon et al., 272 F. 821 (2 C. C. A.); De Hanas et al. v. Cortez-King Brand Mines Co. et al., 26 F.(2d) 233 (8 C. C. A.).

While the bill does not disclose the precise nature of the several appellants' interest in the property, we will assume them to be tenants in common. It has been held that, where the interest of the nonresident plaintiffs is severable, so that they alone may maintain the action, the court may dismiss resident plaintiffs and thus preserve its jurisdiction in that respect. Whittle et al. v. Artis et al. (C. C.) 55 F. 919; Mason v. Dullagham, 82 F. 689 (7 C. C. A.). But this was not done. In face of the challenge of the court's jurisdiction, the cause proceeded to final order with both plaintiffs remaining in the action, and we do not perceive where the court erred in finding against its jurisdiction upon this ground alone.

Again, the bill nowhere alleges what is the amount in controversy. True, this may be shown by the pleadings and papers in the case other than the bill, or by the evidence itself. Robinson v. Suburban Brick Co. (C. C. A.) 127 F. 804; Lee Line Steamers v. Robinson (C. C. A.) 232 F. 417; United States v. Trans-Missouri Freight Association, 166 U. S. 290, 17 S. Ct. 540, 41 L. Ed. 1007. But somewhere and somehow it must appear. In appellants' motion for prelimi-

nary injunction it was stated that the land is worth many times the jurisdictional amount of $3,000. This may well be true, and yet the value of the riparian rights, or the damage to the land by reason of filling up the stream, may be very little. Because of allegations in the bill that one time some boats ran on this water, and that railroads, stockyards, and factories are in the vicinity of the plaintiffs' land, we cannot judicially assume that plaintiffs' damage through the filling would be in excess of $3,000, nor indeed that the land will be damaged at all. From such allegations it cannot be assumed that the amount in controversy exceeds $3,000, any more than it may be concluded from statements of the opposing parties that this little stream, popularly known as "Bubbly creek," is a distinct detriment to the property abutting upon it, which would be greatly enhanced in value if the stream were filled.

Appellants contend that federal jurisdiction is found in the alleged fact that the stream is navigable water of the United States and subject to its jurisdiction.

In general, navigable waters within the state are subject to the control of the state until such time as the federal government by suitable legislation assumes jurisdiction over them. As to this particular stream, we are satisfied from the allegations of the bill and the examination of the applicable statutes that if Congress ever did assume to have control of it, this control was definitely relinquished and abandoned, and was vested in the state of Illinois.

By the Act of Congress of February 27, 1923 (c. 142, 42 Stat. 1323, being a portion of title 33, § 27, U. S. C. [33 USCA § 27]) it was enacted:

"That the Act of September 19, 1890, making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes (Twenty-sixth Statutes, chapter 907, section 7, page 454), and the Act of March 3, 1899, making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors * * * (Thirtieth Statutes, chapter 425, section 9, page 1151), and all Acts amendatory of either thereof shall not, after the passage of this Act, apply to that portion of the west arm of the south fork of the South Branch of the Chicago River, lying between the east line of Ashland Avenue and the north line of Thirty-ninth Street, in the city of Chicago, Illinois, as the same now exists or may hereafter be extended.

"All rights, authority, or control over that part of the Chicago River now possessed or assumed by the United States under said Acts, or either of them, or any amendments thereof are hereby relinquished and abandoned, and all rights, authority, or control over the same that were possessed by the State of Illinois before said Acts were passed are hereby fully restored to said State."

Following this legislation, the Illinois Legislature, on or about June 20, 1927, through what is called Senate Bill No. 74 (Laws Ill. 1927, p. 250), enacted that whenever the United States shall have surrendered, relinquished, or abandoned jurisdiction of any portion of a navigable stream of water within the limits of the city, and, in the judgment of the authorities of the city, it becomes necessary to fill in all or part of such a water course or stream, the city authorities are granted the power to provide by ordinance for so doing. Appellants contend that Congress had no power to surrender jurisdiction over this stream, and that the state acquired no jurisdiction over it because of the operation of the last clause of article IV of the Ordinance of 1787, which provides:

"The navigable water leading into the Mississippi and St. Lawrence Rivers and carrying places between the same, shall become highways and forever free as well to the inhabitants of the other said territories as to the citizens of the United States that may be admitted into the confederacy without any tax, impost or duty therefor."

We cannot ascribe any such potency to this clause. It is not a limitation upon the powers of Congress acting under the Constitution of the United States, nor is it a limitation upon the power of territory which afterwards became a state. In Escanaba Co. v. Chicago, 107 U. S. 678, 2 S. Ct. 185, 27 L. Ed. 442, the court said:

"The ordinance was passed July 13, 1787, one year and nearly eight months before the Constitution took effect; and although it appears to have been treated afterwards as in force in the territory, except as modified by Congress, and by the act of May 7, 1800, c. 41, creating the Territory of Indiana, and by the act of Feb. 3, 1809, c. 13, creating the Territory of Illinois, the rights and privileges granted by the ordinance are expressly secured to the inhabitants of those Territories; and although the act of April 18, 1818, c. 67, enabling the people of Illinois Territory to form a constitution and State government, and the resolution of Congress of Dec. 3, 1818, declaring the admission of the State in-to the Union, refer to the principles of the ordinance according to which the constitution was to be formed, its provisions could not control the authority and powers of the State after her admission. Whatever the limitation upon her powers as a government whilst in a territorial condition, whether from the ordinance of 1787 or the legislation of Congress, it ceased to have any operative force, except as voluntarily adopted by her, after she became a State of the Union. On her admission she at once became entitled to and possessed of all the rights of dominion and sovereignty which belonged to the original States. She was admitted, and could be admitted, only on the same footing with them. The language of the resolution admitting her is 'on an equal footing with the original States in all respects whatever.' 3 Stat. 536. Equality of constitutional right and power is the condition of all the States of the Union, old and new. Illinois, therefore, as was well observed by counsel, could afterwards exercise the same power over rivers within her limits that Delaware exercised over Black Bird Creek, and Pennsylvania over the Schuylkill River."

This case was cited with approval in Huse v. Glover, 119 U. S. 543, 7 S. Ct. 313, 30 L. Ed. 487, in Economy Light Co. v. United States, 256 U. S. 121, 41 S. Ct. 409, 65 L. Ed. 847, and in a number of other cases. We therefore conclude that the federal and state legislation referred to is not vitiated by the quoted clause of article IV of the Ordinance of 1787.

Whether, apart from the Ordinance of 1787, the state of Illinois had the power to authorize the filling in of the channel in question, involves a question with which we do not deal. Concluding that, by the act of Congress referred to, the federal government deprived itself of whatever power it had over this stream, disposes of the contention that a federal question arises by reason of the control of the United States over it.

 Next it is contended that a federal question arises through appellees' undertaking to deprive appellants of their property without just compensation, in contravention of the Fifth Amendment to the Federal Constitution. The bill makes no allegations to support any such contention. It will be noticed that Senate Bill 74 provides for acquiring by eminent domain the rights of riparian owners. The bill does not charge, and we cannot assume, that it will be undertaken to appropriate appellants' riparian rights without making just compensation.

Being of the opinion that the record discloses neither diversity of citizenship, nor a controversy involving over $3,000 in amount, nor any other ground for federal jurisdiction, the order of dismissal of the bill for want of federal jurisdiction is affirmed.