**TOYE BROS. YELLOW CAB COMPANY**

.v.

**Joseph H. IRBY and Leon E. Croenne, Co-Partners, d/b/a Mississippi Coast Limousine Service, et al.**

Civ. A. No. 69–1266.

United States District Court
E. D. Louisiana,
New Orleans Division.

June 26, 1969.

See also D.C., 305 F.Supp. 911.

Ralph L. Kaskell, Jr., of Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiff.

Leon Sarpy of Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, La., David Cottrell, Jr., of Eaton, Cottrell, Galloway & Lang, Gulfport, Miss., for defendants.

Robert G. Haik, New Orleans, La., for intervenor.

BOYLE, District Judge.

This is an action[1] for an injunction brought by Toye Bros. Yellow Cab Company (hereinafter "Toye") against Joseph H. Irby and Leon E. Croenne, d/b/a Mississippi Coast Limousine Service (hereinafter "Coast"), to enjoin them from: a) using their limousines or other motor vehicles to enter[2] upon Moisant International Airport (hereinafter "Airport"), a regional airport; b) discharging, soliciting or picking up passengers; c) allowing its limousines to operate on airport grounds without written permission from the N. O. Aviation Board[3] (hereinafter "Board"); and d) failing to comply with the Board's rules and regulations. The Board has intervened on the side of plaintiff, claiming, in addition to plaintiff's allegations, that the defendant is unwilling to pay any tax, service charge or fee for the privilege of doing business on the airport grounds.

Toye contends, first, it has standing to seek the injunctive relief, second, the Board is a proprietary owner and has the right to regulate the business concessions at the Airport to the point of denying Coast access to the Airport, third, that the ICC order is restrictive in that it does not grant Coast the authority to enter the Airport and pick up and discharge passengers, and, fourth, that even if the Board did allow Coast to operate at the Airport, that this would be a violation of the exclusive franchise granted Toye by the City of New Orleans and it would be entitled to injunctive relief.

Defendant Coast contends, first, that the commerce clause of the Constitution grants exclusive jurisdiction to the Federal Government, second, that the attack on the ICC Certificate of Convenience and Necessity can be directed only to a three judge court, third, that the Airport is public property under Louisiana law, and, lastly, the Board cannot arbitrarily refuse to allow Coast to operate on the airport grounds. Counsel for Coast, on argument, stated Coast's willingness to pay for the privilege of pick-

1. This action was originally filed in the Civil District Court, Parish of Orleans, No. 493-322, on June 2, 1969, and was removed to this Court by Petition for Removal filed by the defendant on June 4, 1969, alleging diversity of jurisdiction.

2. No complaint is made about Coast's discharging passengers.

3. The New Orleans Aviation Board was established under Article XIV, Sections 22 and 31.6 of the Louisiana Constitution, Revised Statutes 2:131–2:141, 2:601 et seq., and Ordinances 15,839 CCS and 680 MCS, City of New Orleans. The duties of the Board were to acquire and construct and thereafter maintain and operate the New Orleans International Airport. This Board is self-sustaining and does not use tax monies from the State of Louisiana or City of New Orleans. Its funds are derived from landing fees, fees charged passenger and air freight carriers and fees from ground concessionaires such as car rentals, restaurants, bars, newsstands and ground transportation agencies such as Toye Bros. and the various taxi companies.

ing up passengers who would use its eastbound interstate service and for office, telephone and other facilities of the nature of those enjoyed by Toye, as it had at Board meetings, but proclaimed its unwillingness, as it had in Board meetings, to pay 10% of its receipts on the ground that such amount would be confiscatory and interfere with its right to exercise its permit to engage in interstate commerce.

Adopting Toye's contentions, the Board also seeks injunctive relief. The Board's counsel, on argument, claimed the Board had the right to control the entry and the doing of business upon the Airport and to charge reasonable fees for the privilege of doing business. The Board, he says, has no quarrel with Coast bringing in and discharging passengers and moving out, even without fees. But counsel states that the Board's quarrel with Coast is that it seeks to pick up passengers destined for Mississippi without having a contract with the Board to pay the required fee, set by the Board, at 10% of Coast's receipts.

The tenor of Board counsel's argument, and the history reflected by the minutes of Board meetings, leaves us with the impression that had Coast agreed to pay the required fee, a contract between the Board and Coast would have been entered into, notwithstanding Toye's "exclusive franchise." [4] However, counsel for the Board ultimately declined, on argument, to say whether the Board would be willing to enter such a contract if Coast were willing to meet its reasonable terms.

Finally, counsel, claiming that because the Airport is a regional airport in the very near future the Board must recognize that service is to be rendered on a regional basis, urged us to grant the interlocutory injunction in view, of the fact that the Toye franchise will expire within the year and it could be that the Board "would then offer for bid a franchise that will be more regional than the present one (Toye's) at this time." If the Airport is now a regional one we do not understand why regional service should not be made available now. Toye's service is not more or less regional. It is purely local, serving only a small part of territorial New Orleans.

Diversity jurisdiction in this Court is present. However, Title 28 U.S.C. §§ 2321–2325 provides for a three judge court, which Coast urges should be convened herein, in an action "to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission." Section 2323 requires the Attorney General to represent the U. S. Government. The ICC order has not been attacked directly by any party, nor has the United States been sued or made a party to this action. Collateral attacks cannot be permitted. Until held invalid, after a proper attack, the Commission's order must be respected by this Court. Braswell Motor Freight, Inc. v. United States, 297 F.Supp. 215 (S.D.Miss., 1969). In the present state of the record, this is not a case for a statutory court.

Harrison County, Mississippi, along its Gulf coast, has steadily increased in population over the past few years. There are also several military facilities located in this area. The defendant Coast was organized by two Mississippi businessmen to transport air passengers directly to the Airport from Harrison County,

---

4. The minutes fail to show any definitive unfavorable action by the Board, prior to the June 3, 1969 meeting at which the Board voted to join in this litigation as intervenor. Though we can find no official Board action taken at the November 6, 1968 meeting approving the service proposed to be rendered by Coast, the tenor of the discussion generally shows that the Board's attitude was not unfavorable. It is noted also that although Coast began its operations on April 15, 1969, following issuance of the ICC permit, the Board took no action to seek injunctive relief until after Toye filed this suit in the State Court on June 2, 1969. The Board intervened on June 4, 1969.

Mississippi [5] and the various military bases [6] located therein, as well as from the Airport to Harrison County. Previously, though other means probably were used, some air passengers destined for Harrison County arriving at the Airport would take a Toye limousine to downtown New Orleans and from there a bus or train to Harrison County. This arrangement is not always suitable to a traveler because of the layover and lack of train and bus service at certain hours. Coast service unquestionably would be found by some travelers to be preferable, considering the direct service, time, convenience, comfort and cost. The limousine service from the Airport, coupled with bus or train fare, would cost, we were told in argument, about six to seven dollars. Coast's limousine service is provided for eleven dollars (nine dollars for servicemen) and is direct non-stop.

On November 5, 1968, Coast, through its attorney, David Cottrell, Jr., appeared before the Board to request permission to indicate to the ICC that the Board approved of the service and that if the permit were granted, reasonable arrangements could be worked out between Coast and the Board. The Board recognized a need for the service and did not object to Coast obtaining a certificate from the ICC, indicating that if a certificate were issued, arrangements could be discussed.

On January 4, 1969, Coast filed an Application for Temporary Authority to transport persons in interstate commerce with the ICC. Southern Airways, Inc., which offers air service between New Orleans and the Gulf Coast, filed a protest on February 14, 1969. The Interstate Commerce Commission on March 5, 1969 issued a temporary Certificate of Convenience and Necessity, effective April 14, 1969, for 180 days. [7] Southern Airways and Greyhound, Inc. filed petitions for reconsideration of the ICC order, which were denied on May 9, 1969.

On February 4, 1969 at a regular meeting of the Board, Toye, represented by its attorney, Ralph L. Kaskell, Jr., pointed out that the franchise [8] granted to Toye

---

5. The cities of Pass Christian, Long Beach, Gulfport, Mississippi City and Biloxi are located in Harrison County.

6. Kessler Air Force Base and the Seabees Base are military installations located in Harrison County. A Veterans Administration Hospital is also located there.

7. The temporary Certificate of Convenience and Necessity issued by the Interstate Commerce Commission, dated March 5, 1969, provides in part as follows:
"Service Authorized
Passengers and their baggage, over regular routes,
Between points on the Mississippi Gulf Coast in Harrison County, Miss. and New Orleans International Airport at Kenner, La.
From points on the Mississippi Gulf Coast in Harrison County, Miss. over U. S. Highway 90 to its junction with Highway 10, thence over Interstate Highway 10 to New Orleans International Airport at Kenner, La. and return over same route."

8. To obtain its exclusive franchise, Toye submitted a bid with other competitors to the Board. The Board in turn recommended to the New Orleans City Council that since Toye's bid was the highest, it should be accepted. By Ordinance, City of N.O. MCS 2032, Toye was granted an exclusive franchise to run from November 1960 to November 1970. It is significant that the franchise purports to grant Toye an exclusive franchise *only for the limited purpose* of picking up air travelers who desire its limousine service *"for transportation to hotels or motels in downtown New Orleans."* We quote the pertinent portion as follows:
"SECTION 3, ARTICLE III,
A—*Exclusive Right to Pick Up Passengers:* In consideration of the services to be rendered by the Grantee, the Board hereby grants to the Grantee *the exclusive right to pick up passengers desiring airport limousine or airport bus service at the airport for transportation to hotels or motels in downtown New Orleans.* * * *."* (Emphasis added.)
In accordance with the franchise Toye is furnished adequate parking bays near the luggage drop, the right to use the public addresss system, office space and private telephones.

by Ordinance, City of N.O. MCS 2032, to run from 1960 to 1970 gives it the exclusive right and privilege to pick up and discharge passengers going to and from New Orleans and the Airport. For this privilege Toye pays to the Board a yearly minimum rental of $18,000, against 10% of its gross receipts from fares charged to its passengers.[9]

At a Board meeting convened on March 4, 1969, Toye, Coast, Southern Airways, Inc. and Greyhound, Inc. were represented. The various means of transportation between New Orleans and the Gulf Coast were discussed. Coast and Greyhound, Inc. were seeking permits from the Board to operate on the airport grounds. Southern Airways, Inc. opposed, along with Toye, who contended that its exclusive franchise prevented the Board from issuing permits to Coast or Greyhound, Inc.

Again, on April 15, 1969, the Board heard argument by Mr. Leon Sarpy, Coast's attorney. He contended that based on the ICC order, which became effective on April 14, 1969, Coast was entitled to parking space, office space, telephones and other administrative aids necessary to conduct business at the Airport. On that date, Coast began operating its limousine service on the airport grounds without the specific approval of the Board.

The regular Board meeting for the month of May, to which the matter was referred at the April meeting, was cancelled. The meeting for June was conducted on June 3 with the attorneys for Toye, Coast and the Board present. Coast again requested office space, a private telephone and parking area for their operations. The Board indicated that they were willing to allow Coast to operate on the Airport and would provide the necessary facilities for a fee of

10% of their gross receipts. Since Toye pays a similar 10% the Board felt that it was reasonable and fair to charge Coast the same. Coast for the first time refused to pay a fee of 10% based on gross receipts, however, they stated that they were willing to pay a flat rate for the facilities made available to them. Toye maintained that its exclusive franchise would be violated if Coast were approved by the Board on any basis.

■ The ICC is presumed to have performed properly its official duties in view of its familiarity with conditions of the industry which it regulates and this presumption supports the Commission's action in the absence of clear evidence to the contrary. Braswell Motor Freight, Inc. v. United States, supra. This is particularly evident in this action wherein the Commission order limited Coast to points in Harrison County, Mississippi and the Airport, a route of about 70 miles from the Western, and 90 miles from the eastern limits of Harrison County. Passengers may be picked up and discharged only in Harrison County and at the Airport. This eliminates any conflict between limousine services operating between the Airport and the easternmost point in the City of New Orleans to which Toye operates, a route of about 15 miles. The certificate was issued for the *convenience* of persons traveling from Harrison County to the Airport and from the Airport to Harrison County. Previous to the service offered by Coast, found necessary by the ICC, transportation between Harrison County and the Airport was available only to travelers arriving at the Airport and destined for Harrison County by taxi or Toye limousine to a bus or train station in downtown New Orleans and then by bus or train, or by private car, rented car, individually chartered taxi or limousine to Harrison County,[10] or

---

9. Under the exclusive franchise Toye paid the City of New Orleans ninety-nine thousand dollars ($99,000.00) in the year 1968.

10. Transportation by Toye limousine and a Greyhound bus or train between the

Airport and Harrison County would cost around six to seven dollars. More direct transportation by individually chartered or hired cars or by taxi or Toye limousine would cost considerably more than Coast's service because neither the taxi compa-

by flight on Southern Airways to Gulf-port. Travelers from points of origin in Harrison County who would depart the Airport were relegated to similar means of transportation, except that it does not appear that Toye limousine service was available.

 It is well established that the regulation of interstate commerce by the states is not invalid as long as there is a real relation to the suitable protection of the people of the state and the regulation is reasonable in its requirements. Savage v. Jones, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182 (1912). Therefore, the Board has the right to impose reasonable rules and regulations upon those concessions and other parties that use the Airport. However, the reasonableness or unreasonableness of the regulations established by the Board, particularly a ten per cent charge based on gross receipts, is not now before us. Though the City of New Orleans be the proprietary owner of the Airport, it may not exclude an interstate carrier or passenger complying with its reasonable regulations for use of its facilities, including its access ways and ramps.

Toye contends that even if the Board approved Coast's doing business on the Airport that this agreement would be in direct conflict with its exclusive franchise granted by the City of New Orleans.

 An exclusive franchise between a state or a city, whose charter is derived from a state legislature, and a local businessman which deals with intrastate commerce would appear to be proper. City of Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341 (1898). However, the question here is not whether the contract between Toye and the Board is valid, but whether or not this exclusive franchise may exclude interstate carriers serving interstate passengers such as Coast is and does. In Southerland v. St. Croix Taxicab Association, 315 F.2d 364 (3 Cir. 1963) a tour agency, with a contract to pick up air passengers on a tour from the mainland and return, brought action against a taxicab association and the Government of the Virgin Islands to enjoin them from interfering with the pick up of passengers at the Alexander Hamilton Airport. The defendant St. Croix had an exclusive franchise with the Virgin Islands to remove all persons from the airport. The Court, discussing United States v. Yellow Cab Company, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), held that the persons served by the plaintiff were in interstate commerce and to force such persons to use a form of transportation not desirable when more convenient transportation was available was a burden on interstate commerce. In the case cited, the plaintiff was not an interstate carrier, as Coast is here, a fact which, we consider, makes out a stronger case for the application in this case of *Southerland's* holding that the exclusive franchise is a burden on interstate commerce and as such could not be used to exclude Coast from picking up interstate passengers at the Airport. We understand that there is no dispute that Coast may discharge passengers without payment of fees to the Board, although it must comply with other reasonable rules and regulations applicable to others.

 Therefore, neither Toye nor the Board, through the exclusive franchise, or the Board through failure to negotiate, may exclude Coast without interfering with and placing an undue burden on interstate commerce. However, we believe the Board does have the right to regulate reasonably the concessions which operate on its premises. As previously stated, the issue of the reasonable-

nies nor Toye provides a regular service between Harrison and the Airport. Coast service, though slightly higher than Toye-bus or Toye-train service from the Airport to Harrison County (but substantially less than equally direct indi-vidually hired taxi, rent-a-car or Toye limousine service) provides the convenience of direct, fast, uninterrupted transportation, eliminating waiting for bus or train departures.

ness or unreasonableness of its regulations is not before the Court at this stage of these proceedings.

Both Coast and the Board must negotiate with each other in good faith to the end that Coast shall have adequate facilities to service air passengers arriving at the Airport en route to and from Harrison County, Mississippi. The Board's refusal to negotiate would as effectively exclude Coast as a holding by this Court that Toye's "exclusive" franchise may not be impaired by Coast in the exercise of its ICC permit. Coast must be willing to comply with all reasonable rules and regulations.

To maintain the status quo, by agreement of the parties, Coast is permitted to enter a parking lot available for use by the general public, there to await its passengers to be picked up for transportation to Harrison County. That lot is set apart and some distance from the area of the baggage dock and the exit through which passengers reach the dock and the lower level of the terminal, in immediate proximity of both of which Toye, local transit buses and taxis are provided parking and loading facilities. The status quo arrangement is not adequate for Coast's operations or for the convenience of travelers who desire its service, and who may locate Coast limousines only on inquiry. In fact, the conditions under which Coast now operates are not much more desirable than the completely undesirable and unwarranted conditions to which Toye and the Board contend in their argument Coast should be subjected, that is, that Coast may not enter the Airport property and must begin its service from outside the Airport gates on the public highway, which we judicially notice to be about one-fifth or one-quarter of a mile from the terminal building.

Pending Coast's and the Board's reaching an agreement, which would provide Coast with adequate facilities and air travelers arriving at the Airport destined for Harrison County with the convenience to which they are entitled, this Court would consider maintenance of the status quo agreement, undesirable as it is, evidence of the good faith of the concerned parties to reach such an agreement making it unnecessary for the Court to intervene. Further orders of this Court, on appropriate complaint herein by either the Board or Coast, may be sought should such an agreement not be reached within a reasonable time.

Accordingly, the Motions of Toye and the Board for preliminary injunctions, as well as the Motions of Coast for a temporary restraining order and a preliminary injunction, are denied.

