**TOYE BROS. YELLOW CAB COMPANY**

v.

**Joseph H. IRBY and Leon E. Croenne, Co-Partners, d/b/a Mississippi Coast Limousine Service, et al.**

**Civ. A. No. 69–1266.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 29, 1969.

Ralph L. Kaskell, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiff.

Leon Sarpy, Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, La., David Cottrell, Jr., Eaton, Cottrell, Galloway & Lang, Gulfport, Miss., for defendants.

Robert G. Haik, New Orleans, La., for intervenor.

## MEMORANDUM OPINION

BOYLE, District Judge.

We previously held that the defendant partnership (hereafter Coast) could not be prevented from exercising its Interstate Commerce Commission permit to operate a limousine service between the Moisant International Airport (hereafter Airport) and Harrison County in the State of Mississippi. We also held that Coast must comply with all reasonable rules and regulations, including the payment of a reasonable charge for the use of Airport facilities, of the New Orleans Aviation Board (hereafter Board) which operates the Airport. Further, we said:

"Pending Coast's and the Board's reaching an agreement, which would provide Coast with adequate facilities and air travelers arriving at the Airport destined for Harrison County with the convenience to which they are entitled, this Court would consider maintenance of the status quo agreement, undesirable as it is, evidence of the good faith of the concerned parties to reach such an agreement, making it unnecessary for the Court to intervene. Further orders of this Court, on appropriate complaint herein by either the Board or Coast, may be sought should such an agreement not be reached within a reasonable time."[1]

The Board and Coast did negotiate an interim contract providing, among other things, for the payment by Coast of 10% of its gross receipts for the privilege of using Airport facilities, including a passenger loading and unloading zone or bay particularly designated and assigned to Coast for its use. Additionally, the contract provides for rental of an office space to Coast at a rate of $3.50 per square foot per year.[2]

We have for decision whether or not the charge of 10% of the gross receipts of Coast is reasonable.

The Board, although it is a governmental agency, owns and operates the Airport in a proprietary capacity. Expenses of operation, maintenance and capital improvements are borne by Airport revenues.

The revenues of the Airport are derived from two principal sources: the fees paid by the airlines for the use of the Airport, which are based on the number of landings and the size of the planes, and, secondly, the fees paid by all other concessionaires, including ground transportation carriers, at the Airport, which are, in the main, based on a percentage of gross receipts. The ground transportation carriers pay as follows: Toye pays ten percent (10%) of gross receipts under an exclusive franchise agreement[3] between it and the Board, the taxicabs pay 25¢ for every delivery and pickup, Louisiana Transit Company pays a flat

1. See Memorandum Opinion of June 26, 1969, 305 F.Supp. 905.

2. Exhibit Coast C.

3. Footnote 8, Memorandum Opinion of June 26, 1969, 305 F.Supp. 908.

monthly rate ($40.00) for a parking bay, as do the two motels, Hilton ($150.00) and Rodeway ($100.00) Inns, which are near the Airport. The Louisiana Transit Company service is used primarily by the employees of the Airport and the two motels dispatch vehicles to the Airport to pick up and deliver their incoming and departing guests. The potential volume of business which the Transit Company and the motels may do is therefore somewhat restricted.

Coast contends that it should pay a flat rate as does the Louisiana Transit Company and the Hilton and Rodeway Inns. On the other hand, the Board is demanding ten percent (10%) of gross receipts. Coast's operation is identical to neither and yet bears a similarity to both. Louisiana Transit and the Hilton and Rodeway Inns do not maintain offices at the Airport; they do not solicit business nor do they operate a limousine service. Toye, however, does maintain an office; it does solicit business and it does have an exclusive franchise with the Board for the operation of limousine service to hotels or motels in downtown New Orleans. Coast would maintain an office, would solicit business and operate a limousine service between the Mississippi Gulf Coast and the Airport and, unlike Toye, does not have an exclusive franchise, but is in direct competition with Southern Airways, Inc., which provides daily flights between the Airport and the Gulfport, Mississippi, airport, and Greyhound Corporation, which offers bus service between the Mississippi Gulf Coast and downtown New Orleans. The difference between the operations of Coast and those of Louisiana Transit and the motels we believe would not justify the Board's charging a flat rate equal or comparable to the fees which the Transit Company and the motels pay. Coast concedes that the Board is entitled to a fair remuneration for the use of its facilities, but contends that it should be on a par with that charged Louisiana Transit Bus Lines, Inc., Hilton and Rodeway Inns. Since the Board is asking ten percent of gross receipts, which it considers a reasonable charge, and since Coast concedes that it should pay its way, the question is, what is a reasonable charge under the circumstances?

Counsel for Coast argues that the Board is without authority to levy even the slightest percentage charge against an interstate carrier. In support thereof, counsel cites Philadelphia & Southern Mail Steamship Company v. Commonwealth of Pennsylvania, 122 U.S. 326, 7 S.Ct. 1118, 30 L.Ed. 1200 (1886) and Galveston, Harrisburg & San Antonio Railway Company et al. v. State of Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031 (1908), which cases hold that a state cannot tax the gross receipts of a carrier domiciled in the taxing state when such receipts were derived from commerce between the states and with foreign countries. We fail to recognize the bearing that these cases have on the issue here. The Board is not attempting to tax the gross receipts of Coast; it is only seeking a fair remuneration for the use of its facilities. In discussing wharfage fees the Supreme Court in Packet Company v. Keokuk, 95 U.S. 80 at 84, 24 L. Ed. 377 at 380 (1877), stated:

> "To determine whether the charge prescribed by the ordinance in question is a duty of tonnage, within the meaning of the Constitution, it is necessary to observe carefully its object and essence. If the charge is clearly a duty, a tax, or burden, which in its essence is a contribution claimed for the privilege of entering the port of Keokuk, or remaining in it, or departing from it, imposed, as it is, by authority of the State, and measured by the capacity of the vessel, it is doubtless embraced by the constitutional prohibition of such a duty. But a charge for services rendered or for conveniences provided is in no sense a tax or duty."

Thus, a service charge even though determined by a percentage is not a tax.

In support of their position the Board and Toye introduced various contracts

between other airports and other transportation service operators around the country. They show that Standiford Field in Louisville, Kentucky receives $1500.00 against 10% of gross receipts collected as fares or for services originating at Standiford Field and they also receive 10% of all Yellow Cab fares which originate at the airport destined for points in Indiana; the Washington National and Dulles International Airports, both located in Virginia, receive 10% of gross receipts for services to and from the airports for the grant of an exclusive franchise to operate between the airports and Washington, D. C.; the Greater Cincinnati Airport located in Covington, Kentucky, receives 10% of gross receipts for each passenger fare collected from each suburban passenger and each limousine passenger and 3% of the fares collected for the transportation of passengers via the small Red Top Limousine for the grant of an exclusive franchise to operate between the airport and Cincinnati, Ohio; Logan International Airport and Hanscom Field in Boston, Massachusetts receives 5% of gross receipts for regular limousine service and 10% of gross receipts for chartered limousine service to and from the airports for the grant of a non-exclusive franchise; the Friendship Airport in Baltimore, Maryland has a bus service to the City of Washington, D. C., and pays a per passenger fee (the exhibit in evidence establishing this fact does not state the amount of the charge per passenger); the Newark Airport in New Jersey receives 10% of gross receipts for all passenger service from a limousine service which operates between the airport and the West Side Terminal in Manhattan, New York; the Greater Pittsburgh Airport in Pittsburgh, Pennsylvania receives a minimum of $1,000.00 per month or 7% of gross receipts of all business originating at the airport, whichever is greater, for the grant of a non-exclusive franchise, and $50.00 against 15% of gross receipts from two new limousine operators who hold ICC certificates; and Midway and O'Hare International Airports in Chicago, Illinois receive 10% of gross receipts for service to and from the airports for an exclusive franchise. Even for those carriers involved in interstate commerce a charge of 10% of gross receipts appears to be an established standard in the industry. In the absence of a decision to the contrary, none of which has been cited, and none of which we have been able to determine to exist, the ponderance of the evidence offered reflecting similar contracts entered into by other airports convinces us that the charge of 10% of gross receipts is reasonable.

Coast introduced into evidence its Balance Sheet and Statement of Income for the period January 1, 1969 to June 30, 1969 and a Statement of Income for the month of July, 1969, which reflect that the business is operating at a substantial loss, part of which is attributable to attorneys' fees ($5,245.15) and organizational expenses ($1,097.50). Although these expenses were charged directly to the first six months of operations, Coast started the service only in the latter three and one-half months. Joseph H. Irby, a co-owner of Coast, refused to state exactly what was initially considered with regard to the costs that would be incurred to operate the business, although he acknowledged his awareness of the 10% charge made to Toye. Certainly the organizers must have been aware that some type of charge would be involved and it would have been poor planning on their part not to have investigated the fees paid by similar limousine operators at this airport or other airports. Other than its financial statements, no evidence was introduced by Coast to show that the 10% charge is unreasonable. Whether Coast makes a profit or not has no bearing on the reasonableness of the percentage charge in question. The charge is a cost of doing business and if Coast cannot afford these costs if they are reasonable, then it must adjust and not the Board.

On the evidence submitted, we find that 10% of Coast's gross receipts from service provided to and from the Airport

is a reasonable charge for the use of the Airport facilities, including a passenger loading and unloading zone or bay particularly designated and assigned to Coast for its use and services.