**TOYE BROS., YELLOW CAB COMPANY,**
Plaintiff-Appellant, Cross-Appellee,

v.

Joseph H. **IRBY** and Leon Croenne, Co-Partners d/b/a Mississippi Coast Limousine Service, Inc., et al., Defendants-Appellees, Cross-Appellants.

No. 28263.

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1971.

David L. McComb, Bernard Marcus, New Orleans, La., for plaintiff-appellant.

Ralph L. Kaskell, Jr., Patrick M. Schott, Asst. City Atty., Leon Sarpy, New Orleans, La., Eaton, Cottrell, Galloway & Lang, Gulfport, Miss., for defendants-appellees.

Before RIVES and SIMPSON, Circuit Judges, and NICHOLS *, Judge of the Court of Claims.

SIMPSON, Circuit Judge:

This suit was brought on June 2, 1969, by Toye Bros. Yellow Cab Company (Toye), a Louisiana partnership, plaintiff-appellant-cross-appellee, in the Civil District Court of Orleans Parish, Louisiana, to enjoin Irby and Croenne, co-partners doing business as Mississippi Coast Limousine Service (Coast), defendants-appellees-cross-appellants, from interfering with Toye's exclusive franchise, granted by the New Orleans Aviation Board (Board), to provide ground transportation by limousine and bus to and from New Orleans Moisant International Airport (Airport). The case was removed to the District Court for the Eastern District of Louisiana on grounds of diversity of citizenship between Toye and Irby and Croenne, citizens and residents of Harrison County, Mississippi. Federal question jurisdiction was also asserted because Coast held a temporary certificate from the Interstate Commerce Commission (ICC). The Board, the operating authority set up under Louisiana Statute to operate Moisant Airport for the City of New Orleans, intervened on the side of Toye. After hearing the district court denied the plaintiff's request for preliminary injunction, as well as the defendants' motions or a temporary restraining order and a preliminary injunction, concluding that the Board, a state agency, could not exclude an interstate carrier operating under federal authority from access to its facilities in order to pick up and deliver interstate passengers. The district court also ordered the parties to negotiate in good faith concerning the fee to be paid by Coast to the Board for use of the Airport facilities, reserving to the parties the right to return to the Court for a further order if an impasse should develop in the negotiations.[1] Plaintiffs filed a notice of appeal of the Court's June 26, 1969, order on June 30, 1969 and the defendants countered on July 15, 1969, with a notice of appeal and cross appeal of the order. Negotiations relative to the fee were generally fruitless, althought the parties did agree upon a temporary fee of 10% of gross receipts, the same rate as paid by Toye. In July, 1969, Coast moved the district court to require the Board to accept a flat monthly fee in dollars for Coast's use of the Airport to pick up and discharge passengers. The district court of September 29, 1969, filed its opinion finding that Coast should pay to the Board 10% of gross receipts as fair compensation for use of the Airport facilities.[2] Judgment was entered on the September 29, 1969, opinion on December 23, 1969.

---

1. The district court's opinion is reported as Toye Bros. Yellow Cab Co. v. Irby, 305 F.Supp. 905 (June 26, 1969).

2. The district court's opinion is reported as Toye Bros. Yellow Cab Company v. Irby, et al., 305 F.Supp. 911 (September 29, 1969).

Coast cross-appeals from the district court's December 23, 1969, judgment. We affirm the district court both as to the appeal and the cross-appeal.

The City of New Orleans, through the Board, built, maintains, and operates the New Orleans International Airport. The Louisiana legislature, in creating the Board, prohibited the use of tax monies to support the Airport and authorized the Board to charge for the use of Airport facilities in order to defray the costs of operation. Pursuant to this legislative authority, the Board contracted exclusively with Toye to provide ground transportation by limousine or bus between New Orleans and the Airport, a distance of about twenty miles. The contract requires that Toye provide round-the-clock service to and from the Airport. Toye pays the Board 10% of its gross receipts from this operation or a specified minimum monthly payment.

Coast sought to offer transportation service between the Airport and the Mississippi Gulf Coast. This designation includes several Mississippi counties and cities bordering the Gulf of Mexico, the nearest being about 75 miles distant from Moisant Airport, and the farthest, Biloxi, Mississippi, being about 125 miles distant. In November 1968, Coast's attorney appeared before the Board to request permission to indicate to the ICC that the Board approved of the proposed service, and that arrangements could be worked out between Coast and the Board. At that time the Board did not object to Coast's proposal, indicating that if a certificate was issued arrangements would be discussed.

On January 4, 1969, Coast filed with the ICC its application for temporary authority to transport persons over the proposed route. Southern Airways and Greyhound, both interstate common carriers, contested the granting of the permit by the ICC. Southern Airways operates daily flights between Moisant Airport and the Gulfport, Mississippi Airport; Greyhound provides bus service between downtown New Orleans and the entire Mississippi Gulf Coast. Toye and the Board state that although they were aware of Coast's intentions, the proceedings before the ICC on the temporary application were without notice to them and they did not protest Coast's application before the ICC.

On February 4, 1969, Toye's attorney appeared before the Board to point out the exclusive nature of Toye's franchise to transport passengers to and from New Orleans and the Airport.

On March 5, 1969, the ICC granted Coast a temporary permit effective April 14, 1969, to offer the Mississippi Gulf Coast transportation service to and from Moisant Airport. After obtaining the temporary authority from the ICC, Coast sought authority from the Board to operate an office, telephone stand, and parking spaces at the Airport, but began operating at the Airport in April 1969 without waiting for Board authority. On June 2, 1969, Toye filed this suit to restrain Coast's operations, and the Board on June 3, 1969, unanimously voted to deny to Coast the authority to pick up and deliver passengers at the Airport. The Board then intervened in this suit. Since the institution of this lawsuit the temporary authority held by Coast has been made permanent pursuant to order of the ICC.

Before we turn to the rationale of our decision, a comment about the nature of the controversy may help put it in proper focus. Toye's present transportation service is confined to the Greater New Orleans Metropolitan area. Coast proposed to provide service to the Mississippi Gulf Coast, some 75–125 miles distant from the Airport. While on the surface it might appear that no conflict between Toye and Coast would develop from the service proposed by Coast, Toye contends that the direct service by Coast would curtail much of Toye's Mississippi Gulf-bound business which previously took Toye-provided transportation to the downtown area of New Orleans and from there went by rent-a-car, or by bus or other common carrier to the Mississippi

Gulf Coast. This is the core of the dispute.

## I. *Access to Airport*

Gibbons v. Ogden, 1824, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23, a starting point for judicial development of the meaning of the commerce clause of the federal Constitution, established that the State of New York could not bar from the navigable waters of that State one licensed by an act of Congress to engage in interstate commerce on those waters. Since *Gibbons* the development of the commerce clause and a correspondingly strong national economy free from protective provincial legislation has rested on the common rubric of constitutional law that a state or local regulation affecting interstate commerce is invalid when it conflicts with a valid federal statutute or administrative regulation. See, e. g., Bibb v. Navajo Freight Lines, Inc., 1959, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003; Southern Pacific Co. v. Arizona ex rel. Sullivan, 1945, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915; South Carolina State Highway Dept. v. Barnwell Bros., 1938, 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734. Because state and local bodies have valid authority to prescribe regulations in many areas, the test of whether a particular state or local enactment conflicts with an exercise by Congress of its commerce powers entails ascertainment of whether the national interest in unfettered flow of interstate commerce outweighs local needs to protect public health, safety, welfare, or morals. Moreover, since conflicts with the commerce power are not always patent, it is often necessary for courts to determine whether a state or local enactment not facially in conflict is nonetheless (1) *in application* a discrimination against interstate commerce to the advantage of intrastate commerce; (2) is inconsistent with a congressional policy; (3) is pre-empted by a pervasive pattern of federal legislation; (4) concerns a problem which is national in scope and should therefore be regulated only by a national authority. See, e. g., Florida Lime and Avocado Growers Incorporated v. Paul, 1963, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248; City of Chicago v. Atchison, Topeka & Sante Fe Ry. Co., 1958, 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174; Dean Milk Co. v. Madison, 1951, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329; Southern Pacific Railroad Co. v. Arizona, ex rel. Sullivan, 1945, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915; Napier v. Atlantic Coast Line Railroad Co., 1926, 272 U.S. 605, 47 S.Ct. 207, 71 L. Ed. 432; Cooley v. Board of Wardens of Port of Philadelphia, etc., 1851, 53 U.S. 299 (12 How. 299), 13 L.Ed. 996.

We recognize the validity of the Board's interest in continued control over the operation of the Airport, and the right of the Board to charge a reasonable fee for the use of Airport facilities, but it is clear here that the outright refusal of the Board to allow an interstate carrier access to its facilities engenders open and obvious conflict with the Congressional power to regulate interstate commerce. Coast holds permanent ICC authority to transport paying customers interstate from Mississippi Gulf Coast points to Moisant Internaal Airport. If Toye and the Board's exclusive franchise argument is permitted to stand, Coast would be required to drop its passengers outside the Airport grounds, approximately one-half mile from the terminal building where baggage is checked, passengers ticketed and boarding of flights takes place. Local carriers and their passengers meanwhile would be provided the convenience of using the Airport's roadways and facilities.[3] The burden on interstate commerce in this instance is great, and there is no justifiable local interest to be protected by the refusal to allow Coast access to the Airport. The conflict of the

3. We are not called upon to determine what result would be appropriate if the Board did not have existing available facilities to accommodate Coast under the ICC permit. It is not disputed that the Board has adequate available facilities to accommodate Coast's operation at the Airport.

**810**

Board's denial of access to the Airport with the intent of the ICC permit is clear, and the discrimination against Coast as an interstate carrier is manifest. *Gibbons,* supra; Castle v. Hayes Freight Lines, Inc., 1954, 348 U.S. 61, 75 S.Ct. 191, 99 L.Ed. 68. See also *Dean Milk,* supra; Southern Pacific Railroad Co. v. Arizona, ex rel. Sullivan, supra.

The Board complains that they believed then and now that the exclusive contract with Toye must be protected. There is nothing at issue in this lawsuit to restrict the Board's exclusive contract with Toye for transportation to and from the Greater New Orleans Metropolitan Area. What is at issue is the right of Toye to demand that interstate travelers be funneled through Toye's transportation system to and from downtown New Orleans to the exclusion of a competing certificated interstate carrier ready to provide direct interstate transportation to the Mississippi Gulf Coast. Stated differently, the bone of contention is the route over which interstate travelers may be required to travel because of existing transportation facilities on their journeys between the Mississippi Gulf Coast and Moisant International Airport. A similar issue was presented to the Third Circuit in the case of Southerland v. St. Croix Taxicab Association, 1968, 315 F. 2d 364. In that case a tour agency which had contracted to pick up air passengers from the United States brought an action against the taxicab association and the government of the Virgin Islands to enjoin them from interfering with the pickup of passengers at the Airport. The defendant taxicab association had an exclusive franchise with the government of the Virgin Islands to transport all passengers from the airport. The court held that persons served by the plaintiff tour agency were in interstate commerce and that to force passengers to utilize one form of transportation when another more convenient and desirable mode of transport was available was an unreasonable burden on interstate commerce, citing United States v. Yellow Cab Company, 1947, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010.

Indisputably, the passengers and the commerce involved here is interstate in nature. Coast's service is limited to stops at the Airport in Kenner, Jefferson Parish, Louisiana, and stops along the resort area of the Mississippi Gulf Coast. No stops are made between these points. This direct service is calculated to find favor with many travelers, and it may be assumed will eliminate some of Toye's passenger traffic which formerly traveled to downtown New Orleans and then used other common carriers between there and the Mississippi Gulf Coast. But the Board's attempt to protect this local enterprise at the cost of an interstate competitor is precisely what the commerce clause prohibits. *Southerland,* supra.

■ We further think that the appellants have not utilized the proper procedure for obtaining judicial review of the ICC certificate. The district court noted that Title 28, U.S.C., Sections 2321–2325, provide for a three-judge court to be convened "to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission". Section 2323 requires the Attorney General to represent the United States. But here the ICC order has not been attacked directly, nor has the United States been sued nor made a party to the action. The district court held that a collateral attack of this nature on the ICC certificate would not be permitted, and that pending a proper successful attack and determination of invalidity, the ICC order would be respected as valid. We endorse the district court's reasoning. The holding in Greyhound Lines, Inc. v. City of Chicago, 7 Cir. 1968, 398 F.2d 36, is not in actual conflict with the view we adopt. The decision does not entertain a collateral attack on the ICC certificates there involved, but instead holds, as to one, that it does not purport on its face to authorize the litigated bus service to O'Hare Airport, and as to another, that the record was unripe for adjudication. If

there was a collateral attack, it was, at most, on an ex parte interpretation by the ICC of its own certificate, and validity of the certificate itself was not in issue. Here, on the contrary, to reverse at the behest of Toye and the Board, we would have to hold the certificate invalid.

II. *The Fee for Access to the Airport*

No one contests that the Board is entitled to a reasonable fee for the use of the facilities provided at the Airport. The issue is to determine what is a reasonable fee, and how that fee may be computed. The basic contention of Coast, the cross-appellant on this point, is that a fee based on a percentage of gross receipts is per se prohibited as an unconstitutional burden on interstate commerce. Galveston, Harrisburg & San Antonio Railway Company v. Texas, 1908, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031; Philadelphia & Southern Mail Steamship Company v. Pennsylvania, 1886, 122 U.S. 326, 7 S.Ct. 1118, 30 L. Ed. 1200. We believe those cases are not relevant. Both cases dealt with efforts by the states to *tax* gross receipts of companies engaged in interstate commerce. But in the instant case the charge levied is not a tax in the traditional sense. It is rather compensation for use of the Airport facilities. "And charges levied by state authority to defray the cost of regulation or of facilities afforded in aid of interstate or foreign commerce have consistently been held to be permissible". Clyde Mallory Lines v. Alabama ex rel. State Docks Comm., 1935, 296 U.S. 261, 267, 56 S.Ct. 194, 197, 80 L.Ed. 215, 219. See also, Packet Company v. Keokuk, 1877, 95 U. S. 80, 24 L.Ed. 377; Transportation Company v. Parkersburg, 1882, 107 U.S. 691, 2 S.Ct. 732, 27 L.Ed. 584; Morgan's Steamship Company v. Louisiana Board of Health, 1886, 118 U.S. 455, 6 S.Ct. 1114, 30 L.Ed. 237; Ouachita Packet Co. v. Aiken, 1887, 121 U.S. 444, 7 S.Ct. 907, 30 L.Ed. 976.

The district court heard evidence tending to establish the fact that 10% of the gross receipts is a commonly-accepted charge throughout the nation for use of Airport facilities. As earlier noted, 10% of gross receipts is the charge which is levied upon Toye. The Board has explained that nearby motels who are not common carriers but have courtesy cars, and the local transit system which transports many of the Airport employees, are charged a relatively small flat dollar fee for access to the facilities at the Airport. The Board convincingly contends that rational grounds are present upon which to distinguish between a fair charge to those providing common carrier limousine and bus service, and these latter-mentioned transport services. We are convinced that the Board is correct.

In summation, we affirm the district court's finding that a fee of 10% of gross receipts in payment for access to the Airport was a reasonable levy and did not constitute an objectional burden on interstate commerce. This holding is dispositive of both cross-appeals taken by Coast, the first from the June 26, 1969, order, and the second from the district court's judgment of December 23, 1969.

Affirmed.